# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *In Re* Third Party Subpoena to Fusion GPS<br><br>c/o Zuckerman Spaeder LLP<br>1800 M Street, NW<br>Washington, D.C. 20036 | Misc. Case No. _____ |
| Aleksej Gubarev, XBT Holding S.A., and Webzilla, Inc.<br><br>Plaintiffs,<br><br>v.<br><br>Buzzfeed, Inc. and Ben Smith,<br><br>Defendants. | Case No. 17-cv-60426-UU |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NON-PARTY FUSION GPS'S MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Fusion GPS ("Fusion") is a strategic intelligence firm headquartered in the District of Columbia founded by experienced investigative journalists. It provides research and investigation into matters of public concern, including "opposition research" on political candidates. Last year, Fusion was engaged to research then-candidate Donald Trump's qualifications for public office and his ties to Russia—an assignment that went to the heart of protected First Amendment activity. This engagement led to the creation of a series of memoranda that have become known as the "Trump Dossier." Now, Fusion has been served with a third-party subpoena (for a September 6 appearance in the District of Columbia) in connection with defamation litigation pending in the Southern District of Florida. The subpoena

seeks to compel Fusion to disclose confidential information related to the creation of the Trump Dossier, including sources, client identity, and internal documents and communications.

Fusion seeks an order quashing the subpoena or, in the alternative, granting a protective order against most of its demands.  Not only is this information sought privileged under the First Amendment, it is also not relevant to the underlying case.  The underlying defamation case turns on Buzzfeed's state of mind when it published the Trump Dossier (*i.e.*, whether Buzzfeed published it negligently or with actual malice) and whether any reporting privileges attach to its publication (*i.e.*, whether the fair report privilege and/or neutral report privilege protected the publication from liability).  How the Trump Dossier was created, including Fusion's engagement and involvement, is of no relevance whatsoever.  Despite this lack of relevance, the subpoena seeks to burden Fusion—a nonparty—with searching for and producing 11 categories of documents and testifying in a Rule 30(b)(6) deposition about 19 different subjects that are either privileged or unrelated to the issues in the underlying case—or both.[1]

## I.      Background

### a.   The Trump Dossier

As has been reported extensively in the media, during the 2016 presidential race, Fusion was hired to research and investigate then-candidate Donald J. Trump.  As part of the engagement, Fusion hired Christopher Steele to investigate Trump's ties to Russia.  In the course of that work, Mr. Steele produced a series of seventeen (17) memoranda on Trump and Russia.

---

[1] Plaintiffs' subpoena contains two schedules: one listing 11 categories of requested documents and one listing 19 Areas of Inquiry for a Rule 30(b)(6) deposition.  The original schedules focused on the Dossier as a whole.  *See* Ex. 1 (Subpoena and Original Schedules).  After counsel for Fusion spoke to Plaintiffs' counsel on August 21, 2017, Plaintiffs' counsel amended the schedules to focus primarily on the particular memorandum that contains the allegedly defamatory statements about Plaintiffs (the "December Memorandum").  *See* Ex. 2 (Amended Schedules); Ex. 3 (Email from Evan Fray-Witzer to Steven Salky (Aug. 24, 2017)).  Subsequently, counsel for Fusion sent specific objections and an explanation of applicable privileges to Plaintiffs' counsel, *see* Ex. 4 (Email from Steven Salky to Evan Fray-Witzer (Aug. 25, 2017)), but Plaintiffs' counsel declined to further revise the amended schedules.  *See* Ex. 5 (Email from Evan Fray-Witzer to Steven Salky (Aug. 26, 2017)).

This series of memoranda has become known as the "Trump Dossier" (hereinafter referred to as the "Trump Dossier" or "Dossier").[2]  All but one of the memoranda in the Dossier are dated prior to the 2016 presidential election.   The single post-election memorandum, which is dated December 13, 2017, is the only memorandum to mention Plaintiffs ("December Memorandum"). Buzzfeed published the Trump Dossier on its website on January 10, 2017.

b. <u>Plaintiffs have filed two lawsuits related to the same alleged defamation.</u>

Plaintiffs have filed two parallel defamation lawsuits—one in Florida and one in England—alleging that they were defamed by statements in the December Memorandum.  *See* Ex. 6 (S.D. Fla. Compl.); Ex. 7 (Claim, High Court of Justice, Queen's Bench Division).  In the Florida lawsuit, from which this subpoena arises, Plaintiffs have sued Buzzfeed and its editor-in-chief for the publication of the Dossier, particularly two allegedly defamatory sentences in the December Memorandum.   Those sentences state that an unnamed source claimed that "XBT/Webzilla and its affiliates" had used "botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct 'altering operations' against the Democratic Party leadership. Entities linked to one Aleksei GUBAROV were involved and he and another hacking expert, both recruited under duress, by the FSB, Seva KAPSUGOVICH, were significant players in this operation."  *See* Ex. 6 (Compl. ¶ 26).[3]  Plaintiffs allege that Buzzfeed published these statements

---

[2] In their subpoena, Plaintiffs define the Dossier as follows:

> [T]he term 'Dossier' shall mean <u>both</u> the individual memos and the compilation of said memos as a unified whole.  The 'Dossier' refers to those memos and the compilation of such memos which were prepared by, for, at the direction or behest of, or for the benefit of Fusion GPS and which related to alleged connections between Donald Trump and Russia.   For the avoidance of confusion, the term 'Dossier' is intended to mean those materials widely-referred to as the 'Trump Dossier,' which was published by Buzzfeed . . . .

*See* Ex. 2.

[3] The full paragraph from the December Memorandum is as follows:

with the knowledge that at least certain portions of the Trump Dossier were untrue, thereby entitling them to recover substantial damages.  *See id.* (Compl. ¶¶ 2, 29-32, 51).

In a separate claim brought in the High Court of Justice in London, England, Plaintiffs[4] sue Christopher Steele and his company, Orbis Intelligence LTD, who they allege authored and prepared the memoranda that comprise the Trump Dossier, including the allegedly false sentences about Plaintiffs.  *See* Ex. 7 (Claim ¶ 8.2).

      c.   <u>In the Florida litigation, Buzzfeed defends primarily on the basis of fair and neutral reporting privileges.</u>

Buzzfeed and Smith admit that they published the Trump Dossier on January 10, 2017, and defend primarily on the basis that the fair report and neutral report privileges protect their accurate and disinterested publication as either an official report or a report of a responsible organization on a matter of public interest about a public figure.  *See* Ex. 8 (Am. Answer of Def.'s Buzzfeed, Inc. and Ben Smith to Pls.' Compl. for Damages at 9, *Gubarev v. Buzzfeed, Inc.*, No. 17-cv-60426-UU (S.D. Fla. June 29, 2017)).  Relatedly, they also defend on the basis

---

[redacted] reported that over the period March-September 2016 a company called XBT/Webzilla and its affiliates had been using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct 'altering operations' against the Democratic Party leadership.  Entities linked to one Aleksei GUBAROV were involved and he and another hacking expert, both recruited under duress, by the FSB, Seva KAPSUGOVICH, were significant players in this operation.  In Prague, COHEN agreed contingency plans for various scenarios to protect the operations, but in particular what was to be done in the event that Hillary Clinton won the presidency.  It was important in this event that all cash payments owed were made quickly and discreetly and that cyber and other operators were stood down/able to go effectively to ground to cover their traces.  (We reported earlier that the involvement of political operatives Paul MANAFORT and Carter PAGE in the secret TRUMP-Kremlin liaison had been exposed in the media in the run-up to Prague and that damage limitation of these also was discussed by COHEN with the Kremlin representatives.)

*See* Ex. 6 (Compl. ¶ 26).

[4] Webzilla B.V. and Webzilla Limited appear as plaintiffs in the England case.  Webzilla, Inc. appears in the Florida case.

that they lacked the requisite malice to be held liable, as the plaintiffs are public figures.  *See id*. at 10.

## II.      Legal Standards

Federal Rule of Civil Procedure 45(d)(3) requires the Court to quash or modify a subpoena when the subpoena either "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(iii)-(iv).  Rule 45 also requires that nonparties be protected "from significant expense resulting from compliance" with a subpoena.  Fed. R. Civ. P. 45(d)(2)(B)(ii).

Rule 26(b)(2) requires a court to limit discovery if the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or if the discovery is not "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).  A court may also issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: forbidding the disclosure of discovery, specifying terms including time and place or the allocation of expenses for the disclosure of discovery, forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."  Fed. R. Civ. P. 26(c)(1).

## III.     Plaintiffs' Subpoena Imposes an Undue Burden and Expense on Fusion

Plaintiffs have a responsibility to "avoid imposing undue burden or expense on" a nonparty subject to a subpoena.  Fed. R. Civ. P. 45(d)(1).  In assessing whether a burden is undue under Rule 45, the court looks to the factors articulated in Rule 26(b) of the Federal Rules of Civil Procedure.  *Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007).  Rule 26 generally limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).   In evaluating discovery requests, a court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."   *Id.*; *see also Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3 (D.D.C. 2017) (noting the "undue burden" analysis requires the court to "balance the interest served by demanding compliance with the subpoena against the interests furthered by quashing it" and "courts should consider relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed" (internal quotation marks omitted)).   A Rule 45 subpoena that seeks information that is not relevant to the underlying case or that is overbroad imposes an "undue burden" on a party.   *See, e.g.*, *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012); *see also U.S. v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 36-37 (D.D.C. 2012) (noting that "[c]ourts may deny motions to compel if they find that the information requested is irrelevant" or deny discovery on "issues that stray too far away from the core facts of the case").   Courts may also consider whether compliance with a Rule 45 subpoena implicates privacy interests and whether the sought-after evidence is more readily available from another source.   *See, e.g.*, *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927-32 (7th Cir. 2004).

a.   Plaintiffs' subpoena primarily seeks discovery that is not relevant.

The underlying case is about Buzzfeed's publication of the Dossier, and, particularly, the two allegedly defamatory sentences in the December Memorandum.   At issue will be whether Plaintiffs can establish that Buzzfeed published the December Memorandum negligently or with malice (depending on whether they are considered public figures) and that no reporting privilege

protects the publication from liability.  Most of the discovery sought by the subpoena is not relevant to these issues and instead seeks only to discover Fusion's activities, which are not at all germane to Plaintiffs' claim.  For instance, the subpoena seeks discovery about Fusion's ownership and operation as well as its engagement or hiring (Ex. 2, (Areas of Inquiry 1, 2, & 6)), Fusion's clients and payments (*id.*, (Areas of Inquiry 3 & 7)), and Fusion's engagement of Christopher Steele and/or other contractors (*id.*, (Areas of Inquiry 4 & 10)).  None of these categories of information even reference the December Memorandum, let alone go to Buzzfeed's state of mind or the applicability of any reporting privilege.  Even when the subpoena's inquiries mention the December Memorandum, they still focus on Fusion's conduct, not on subjects that could lead to evidence about Buzzfeed's conduct or state of mind.  *See id.* ((Areas of Inquiry 8, 9, & 11) (focusing on steps taken by Fusion, or others working for it, to obtain information that led to the creation of the December Memorandum, the preparation of the December Memorandum, and efforts to verify the statements in the December Memorandum) and Doc. Req. 10 (all communications with Christopher Steele concerning the Dossier)).

Likewise, Fusion's clients' identity and the identity of the Dossier's sources are also irrelevant to the underlying case.  The identity of Fusion's clients, *id.* (Area of Inquiry 3), does not bear remotely on the issues in the case.  Buzzfeed did not know the identity of Fusion's clients when it published the Dossier, *see* Ex. 9 (Fusion Decl. ¶ 9), so the clients' identity can have no relevance to Buzzfeed's state of mind in publishing the Dossier and also does not help Plaintiffs establish their claim or contest any of Buzzfeed's defenses.

Similarly, the subpoena's requests for the sources of information in the December Memorandum are also not relevant to Plaintiffs' claim.  Ex. 2 (Area of Inquiry No. 5 & Doc. Reqs. 1, 7-9).  Plaintiffs brought their defamation case explicitly on the ground that the statement

in the December Memorandum about them is false.  Ex. 6 (Compl. ¶ 27) ("Not a single portion of this statement [i.e., the sentences in the December Memorandum that reference Plaintiffs] has any basis in fact whatsoever.").  Thus, Plaintiffs claim to know the statement to be false and apparently can establish its falsity without knowing the identity of any source.  Additionally, to the extent that Buzzfeed—which has not sought discovery from Fusion—sought to establish the truth of the defamatory statements, it could do so independently and without relying on the identity of the confidential sources.  The identity of a source is sometimes relevant in defamation litigation to the state of mind of the publisher, but, here, Buzzfeed explicitly acknowledged that it did not know the truth or falsity of the contents of the Dossier when it published the Dossier. *See, e.g.*, Ken Bensinger et al., *These Reports Allege Trump Has Deep Ties to Russia* (Jan. 10, 2017, 5:20 PM), https://www.buzzfeed.com/kenbensinger/these-reports-allege-trump-has-deep-ties-to-russia?utm_term=.vijQWebMx#.sg3LevaVo.  Thus, the identities of the sources cannot be relevant to Buzzfeed's state of mind when it published the Dossier.

In fact, the only remotely relevant discovery sought through this unduly burdensome third party subpoena—discovery of the pre-publication communications with Buzzfeed and Ben Smith concerning the publication of the Dossier—could be sought from Buzzfeed, a party to the litigation, rather than by burdening Fusion, a nonparty, with the request.[5] None of the other discovery requests are targeted to discover evidence that is relevant to a defamation claim against Buzzfeed and Ben Smith.  The subpoena requests may be the subject of Plaintiffs' curiosity, but they are not relevant to Plaintiffs' case and, accordingly, should not be permitted.

---

[5] Fusion has set forth both General and Specific Objections to Document Requests 5 and 6, which seek "all communications between Fusion GPS and Buzzfeed concerning the Dossier" and "all communications between Fusion GPS and Ben Smith concerning the Dossier."  *See* Ex. 10 (Objections of Fusion GPS to R. 45 Subpoena for Docs.).  As indicated in its Objections, Fusion will, subject to its objections, produce pre-publication communications, if any, with Buzzfeed or Ben Smith concerning Buzzfeed's publication of the Dossier.  *Id.*

      b.  <u>Plaintiffs' subpoena seeks discovery of information that is already known to Plaintiffs and it is therefore unduly burdensome.</u>

Plaintiffs already know from Christopher Steele's responses in the case in England certain significant information they now seek from Fusion.  For example, in his Defence (attached hereto as Ex. 11), Steele has described what led to the creation and preparation of the December Memorandum, about which Plaintiffs now seek to depose Fusion.  *See* Ex. 2 (Area of Inquiry 9).  Steele also describes the provision of the Dossier and/or the December Memorandum to a senior U.K. government official and to Senator John McCain because of its importance to matters of national security.  Ex. 11 (Steele Defence ¶¶ 36-39).  The subpoena nonetheless commands Fusion to produce documents about (Ex. 2 (Doc. Req. 11)) and to testify about (*id.* (Area of Inquiry 15)) these events.  Compelling Fusion, a third party, to search for documents and prepare for a Rule 30(b)(6) deposition on matters already known to Plaintiffs is clearly "unduly burdensome."

      c.  <u>The subpoena is a fishing expedition into any information that Fusion has about Plaintiffs.</u>

The subpoena also seeks discovery that is not limited to the Dossier or the December Memorandum, but rather seeks to uncover anything that Fusion has ever known about Plaintiffs.  Document Requests 2, 3, and 4 seek all documents "concerning" Plaintiffs and Document Requests 7, 8, and 9 seek all documents "reflecting or relating to the sources of information concerning" Plaintiffs.  *Id.*  Plaintiffs also seek to depose Fusion about "any and all information concerning" Plaintiffs.  *See id.* (Areas of Inquiry 17, 18, & 19).  These requests contain no limitation whatsoever in context, time, or nature, and contain no connection to the allegedly defamatory statements at issue in the underlying case.  In other words, Plaintiffs want to rummage through Fusion's files for any piece of paper that may mention them, in hopes of

finding something useful or interesting. Such requests are the quintessential definition of a "fishing expedition" and would unduly burden the limited staff and resources of Fusion, a nonparty to this litigation.  Such discovery is overbroad, unduly burdensome, unlikely to discover any evidence relevant to the underlying case, and should be denied.

**IV.      Materials Sought by the Subpoena Are Protected by the First Amendment**

In addition to being unduly burdensome and seeking discovery that is not relevant to their claim, Plaintiffs' subpoena intrudes significantly on Fusion's and its clients' First Amendment rights and activities.  The First Amendment protects against the discovery sought by Plaintiffs.

a.   The First Amendment protects Fusion's and its clients' activities.

Fusion, on behalf of and in association with its clients, often engages in research on political issues of public concern and candidates running for public office.  As such, Fusion's activities "serve as a vehicle for political expression and association," which are protected by the First Amendment.  *United States v. Garde*, 673 F. Supp. 604, 607 (D.D.C. 1987); *see also Perry v. Schwarzenegger*, 591 F.3d 1147, 1159 (9th Cir. 2010) ("'The First Amendment protects political association as well as political expression,' and the 'freedom to associate with others for the common advancement of political beliefs and ideas is … protected by the First and Fourteenth Amendments.'" (quoting *Buckley v. Valeo*, 424 U.S. 1, 15 (1976); *Kusper v. Pontikes*, 414 U.S. 51, 56-57 (1973)).  Depending on the engagement, Fusion may use its research to educate reporters, government officials, and/or political leaders about issues of public interest.

In this case, Fusion performed research into a matter of intense public concern—Russian interference in the United States 2016 presidential election—and a presidential candidate, Donald J. Trump.  Such activities go to the heart of the First Amendment.  *Cf. Buckley*, 424 U.S.

at 14 (noting that "debate on the qualifications of candidates" is one of the "most fundamental First Amendment activities").   Furthermore, the contents of the Dossier were raised with government officials in an effort to protect the national security interests of the United States— conduct which is also protected by the First Amendment as a "petition" to the government.  *See* Ex. 11 (Steele Defence ¶¶ 20-21); *see also BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 524-25 (2002) ("[T]he right to petition [the government is] one of the most precious of the liberties safeguarded by the Bill of Rights" because "the right is implied by the very idea of a government, republican in form."  (internal quotation marks and alteration omitted)).

> b.  <u>Being forced to respond to the subpoena would chill and frustrate Fusion's and its clients' pursuit of political activity.</u>

The First Amendment prohibits the extensive and intrusive discovery sought by the subpoena into Fusion's work related to the Dossier.  Document Requests 2-4 and 7-11 and Areas of Inquiry 2-12 and 15-19 directly implicate Fusion's First Amendment rights.

In seeking the identity of Fusion's clients, the subpoena seeks to expose political affiliations and political activities which Fusion and its clients sought to engage in anonymously and confidentially.  *See, e.g., Garde*, 673 F. Supp. at 607 (refusing to compel disclosure of the identity of clients based on the First Amendment because compelled disclosure would cause organization to "lose the confidence of some of its whistleblower informants and its efforts to gather and present safety allegations will suffer"); *see also NAACP v. Alabama*, 357 U.S. 449, 462 (1958) ("It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute [an] effective . . . restraint on freedom of association. . . ."); *AFL-CIO v. Fed. Election Comm'n*, 333 F.3d 168, 175 (D.C. Cir. 2003) ("compelled disclosure of political affiliations and activities can impose just as substantial a burden on First Amendment rights as can direct regulation").  In seeking Fusion's information and documents related to its

work on the Dossier, the subpoena seeks to expose highly sensitive internal documents and communications.  *See, e.g.*, *AFL-CIO*, 333 F.3d at 176-78 ("compel[led] public disclosure of an association's confidential internal materials . . . intrudes on the privacy of association and belief guaranteed by the First Amendment as well as seriously interferes with internal group operations and effectiveness" (internal citations and quotation marks omitted)); *Perry*, 591 F.3d at 1162 (holding that discovery seeking internal campaign communications infringed on the First Amendment by chilling participation and muting the internal exchange of ideas).

As described in the attached declaration, the compelled disclosure of this information would undermine, deter, and chill Fusion's and its clients' rights to engage in political activity and political speech, to speak anonymously, to associate freely with others, and to petition the government.  *See* Ex. 9 (Fusion Decl.).  Fusion's ability to associate with its clients, its colleagues, its contractors or subcontractors, and its employees and staff would all be chilled substantially by compelled compliance with the subpoena.  *Id.* ¶¶ 11-14.  Additionally, compelled disclosure of Fusion's clients would expose those clients to significant harassment. *Id.* ¶ 16.  Another declaration, attached as Exhibit 12, demonstrates that individuals and entities who work with Fusion would be unlikely to affiliate with or hire Fusion in the future if their identities were likely to be revealed in civil discovery.

c.   Balancing Fusion's and its clients' First Amendment interests against Plaintiffs'
     need for the information sought makes clear that the subpoena should be quashed.

When discovery demands implicate the First Amendment, the D.C. Circuit has mandated a balancing inquiry to determine whether the discovery should be permitted: the "First Amendment claim should be measured against the . . . need for the information sought."  *Black Panther Party v. Smith*, 661 F.2d 1243, 1266 (D.C. Cir. 1981).  The court must assess (1) whether the information sought "go[es] to the heart of the lawsuit"; and (2) whether the party has

made reasonable attempts to obtain the information from alternative sources. *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., & Its Locals 1093, 558 & 25 v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.*, 590 F.2d 1139, 1152 (D.C. Cir. 1978); *see also Black Panther Party*, 661 F.2d at 1267-68 (When First Amendment interests exist, "[t]he interest in disclosure will be relatively weak unless the information goes to 'the heart of the matter,' that is, unless it is crucial to the party's case." (internal citations omitted)). "Infringement of First Amendment interests must be kept to a minimum." *Black Panther Party*, 661 F.2d at 1268.

Under that test, the discovery sought by Plaintiffs should not be allowed. Weighed against the substantial infringement of Fusion's First Amendment rights, the subpoena seeks largely irrelevant information, as discussed above, rather than seeking "crucial" information at "the heart of" Plaintiffs' defamation claim. Instead of focusing on Buzzfeed's decision to publish, the subpoena wanders aimlessly into how and with whom Fusion performed its investigation and on whose behalf it did so. Other than the discovery directed to Fusion's pre-publication communications with Buzzfeed about publishing the Dossier, virtually every other request is a constitutionally impermissible fishing expedition. Further, Plaintiffs have not demonstrated that they have sought the information from alternative sources.

Courts in this district have repeatedly held that documents and testimony of the kind that Plaintiffs seek are off-limits. *See, e.g.*, *Wyoming v. United States Dep't of Agric.*, 208 F.R.D. 449, 455 (D.D.C. 2002) (denying motion to compel production of documents, including internal communications and communications among various groups, from nonparty witnesses on associational privilege grounds where documents sought were not highly relevant and government had not reasonably attempted to obtain information elsewhere); *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3 (D.D.C. 2002) (rejecting discovery requests for information about

political action groups' activities, the identities of persons who associated with them, information related to contributors and others, recognizing that such information went to "the essence of First Amendment freedoms"); *Garde*, 673 F. Supp. at 607 (refusing to enforce subpoena seeking information, including client identities, in possession of whistleblower organization where government had not "carefully and conscientiously explored" alternative means).

Such an outcome is particularly necessary here, given that Fusion is not a party to this lawsuit.  Non-party status is yet another factor that weighs against compelling disclosure.  *See, e.g.*, *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc*., No. 05-2164-MLW-DWB, 2007 WL 852521, at *6 (D. Kan. Mar. 16, 2007) ("KHA is not a member to this lawsuit and this weighs against compelling disclosure.") (citing cases).

## V.      Rule 45 Protects the Source(s) for the December Memorandum from Disclosure.

The subpoena explicitly seeks discovery of the sources for the information in the December Memorandum. *See* Ex. 2 (Area of Inquiry 5 & Doc. Reqs. Nos. 1, 7-9).[6]  Fusion's First Amendment privilege prohibits such discovery.  Additionally, discovery into the identity of the Dossier's sources must be denied under the proportionality provision of Rule 26 and the balancing of the interests required by Rule 45.

As is evident from the text of the Dossier and the reaction to its publication, its sources are intensely confidential.  Disclosure of the identity of the sources could put those individuals in grave and life-threatening danger.  *See* Ex. 9 (Fusion Decl. ¶ 17) ("[I]f the identity of the confidential sources in the Trump Dossier were revealed, I believe that their lives would be put in immediate danger.").  The U.S. State Department has recognized that people perceived as whistleblowers or critics of the Russian government have been murdered in Russia.  *See, e.g.*,

---

[6] Document Requests 7-9 are overbroad, as they seek information about sources regarding Plaintiffs unconnected to the December Memorandum.  But these requests would also require the production of documents as to the sources of the information about Plaintiffs in the December Memorandum.

U.S. Dep't of State, *Conviction of Five of Those Responsible for the Murder of Boris Nemtsov*, June 30, 2017, https://www.state.gov/r/pa/prs/ps/2017/06/272311.htm (noting the conviction of some of the individuals related to the assassination of a leader to the opposition to Vladimir Putin's government); U.S. Dep't of State, *10th Anniversary of the Murder of Anna Politkovskaya*, Oct. 6, 2016, https://2009-2017.state.gov/r/pa/prs/ps/2016/10/262874.htm (commemorating anniversary of unsolved murder of Russian journalist); U.S. State Dep't, *Russia 2016 Human Rights Report*, https://www.state.gov/documents/organization/265678.pdf (noting that Alexander Litvinenko, a former KGB officer turned whistleblower, was poisoned in London in what was likely an FSB operation).  Under such circumstances, this Court should not permit discovery of the identities of any sources.[7]

Courts have maintained the confidentiality of sources in cases where far less is at stake. For example, in *Mgmt. Info. Techs., Inc. v. Alyeska Pipeline Serv., Co*., 151 F.R.D. 478, 482–83 (D.D.C. 1993), discovery was sought of the identity of confidential sources within a company who had provided information to the plaintiff about the defendant company's alleged environmental abuses.  The court refused to permit such discovery, holding that it was "unwilling to subject non-parties who work for [defendant] or its owner companies to the possible retaliation that frequently results when a whistleblower is identified." *Id.* at 481-82 (reviewing studies and reports about employment consequences for whistleblowers).

---

[7] A long line of cases has established an "informant's privilege" that protects from disclosure the identity of persons who furnish information about violations of law to law enforcement officers.  *See, e.g.*, *Roviaro v. United States*, 353 U.S. 53 (1957).  Courts have noted that the privilege is particularly strong in civil cases where the privilege is not in tension with a defendant's Fifth and Sixth Amendment guarantees.  *See, e.g.*, *Matter of Search of 1638 E. 2nd St., Tulsa, Okl.*, 993 F.2d 773, 775 (10th Cir. 1993).  Although Plaintiffs' subpoena to Fusion seeks the identities of sources who gave information to Christopher Steele and not to the government, Fusion notes that the U.S. government is investigating the assertions in the Dossier and it is therefore conceivable that these sources may be or may become sources of the U.S. government.

*In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234 (E.D. Pa. 2014), addressed a subpoena directed to a nonparty trade research group, TRG, which conducted industry research and sold confidential reports of its findings and opinions to institutional investors. The subpoena sought, among other things, information about the sources for a TRG report. *Id.* at 238.   TRG argued that being forced to reveal its sources would cause it significant financial harm because its network of sources was a primary contributor of value to the company and the sources had been promised confidentiality. *Id.* at 249.   The court agreed that discovery should not be permitted that would expose any source's identity. *Id.*

In *Gill v. Gulfstream Park Racing Ass'n., Inc.*, 399 F.3d 391, 402-03 (1st Cir. 2005), the First Circuit dealt with the confidentiality of informants who provided information to a private association of race tracks investigating the plaintiff's illegal horse racing practices.   The First Circuit held that, under Federal Rule of Civil Procedure 26, the district court had erred by permitting the disclosure of the informants' identity without balancing "considerations of the public interest, the need for confidentiality, and privacy interests" against the appellants' asserted interest in the information, and ordered the district court to weigh those interests on remand. *Id.* at 403.

These three cases illustrate the duty of courts to protect the identities of confidential sources in a range of situations where the interests at stake do not present the kind of life-and-death situation that exists here.   The danger of any disclosure of a source's identity in this case cannot be overstated; it could jeopardize the physical safety and lives of these sources.   These high stakes must be weighed against the lack of relevance of the identity of the source(s) of the December Memo to Plaintiffs' claim.   Because Buzzfeed explicitly acknowledged that it did not know the truth or falsity of the Dossier, the identity of the source(s) are not relevant to

16

Buzzfeed's state of mind when it published the December Memorandum. Under such circumstances, discovery of the identity of any source should not be permitted.

### VI.    Request for Cost-Shifting under Rule 45

The Court should quash the subpoena.[8] If the Court does not quash the subpoena, Fusion requests that Plaintiffs bear the burden of the costs and expenses associated with complying with the subpoena. *See Linder v. Calero–Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001) (Rule 45 "ma[kes] cost shifting mandatory in all instances in which a nonparty incurs significant expense from compliance with a subpoena."). Fusion's compliance costs include significant attorneys' fees as well as the time and resources that will have to be expended to prepare for and sit through a Rule 30(b)(6) deposition.

### Conclusion

For the foregoing reasons, Fusion requests that the Court quash the subpoena at issue or, in the alternative, issue a protective order that would protect Fusion from having to produce documents and/or testify, except for the noted exception.

Dated:  August 31, 2017                    Respectfully submitted,

/s/ Steven M. Salky
William W. Taylor, III, (D.C. Bar No. 84194)
Steven M. Salky (D.C. Bar No. 360175)
Rachel F. Cotton (D.C. Bar No. 997132)
**ZUCKERMAN SPAEDER LLP**
1800 M Street, NW, Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
wtaylor@zuckerman.com
ssalky@zuckerman.com
rcotton@zuckerman.com
*Attorneys for Non-Party Fusion GPS*

---

[8] As previously indicated, Fusion will produce its pre-publication communications, if any, with Buzzfeed or Ben Smith concerning the publication of the Dossier, and, thereafter, at an agreed upon date other than September 6, 2017, will testify about that limited subject matter.