## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| *In Re Third Party Subpoena to Fusion GPS*<br>c/o Zuckerman Spaeder LLP<br>1800 M Street, NW<br>Washington, DC 20036 )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:17-mc-02171-TSC |

_____)

_____

| | |
|---|---|
| )<br>*Aleksej Gurbarev, XBT Holding S.A., and*<br>*Webzilla, Inc.*,  )<br>          Plaintiffs,  )<br>  )<br>          v.  )<br>  )<br>*Buzzfeed, Inc.* and *Ben Smith*,  )<br>  )<br>          Defendants.  )<br> | Case No. 17-dv-60426-UU |

_____)

### PLAINTIFFS' OPPOSITION TO FUSION GPS'S MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

#### ORAL ARGUMENT REQUESTED

Introduction

In its Motion to this Court, Fusion GPS insists that it is an entity that is accountable to no

one.  Instead, Fusion insists that it should be permitted to make and aggressively disseminate

defamatory statements, and then hide from discovery all information about the sources of its

"information;" the identity of the clients who sought such information; what (if anything) it did

to verify the information; the identity of the reporters to whom they aggressively marketed the

information; what warnings (if any) it provided to reporters concerning the unverified nature of

the information; how much it might have paid its sources; and whether it subcontracted the

collection of information to third parties (and if so, the identities of such individuals).

Indeed, despite what Fusion would have this Court believe, its objections have nothing to do with the *scope* of the requests (which Plaintiffs' counsel narrowed at Fusion's request, a fact omitted from Fusion's Motion) or even concerns about use of the information outside the present litigation (Plaintiffs' counsel agreed to strict limitations on the use of any information provided – including a "US attorney's eyes only" provision), but rather its belief that it should be shielded *entirely* from routine discovery requests, as demonstrated by the fact that Fusion has produced absolutely nothing in response to Plaintiffs' subpoena.[1]  Plaintiffs' requests – which consist of only eleven (11) document requests and nineteen (19) targeted areas of inquiry for Fusion's deposition – are both reasonable and reasonably calculated to lead to the discovery of admissible information.  As such, Fusion's Motion should be denied in its entirety.

In further support of this Opposition, Plaintiffs state as follows.

<u>Factual Background</u>

In 2015, Fusion GPS ("Fusion") was retained by an unnamed client to perform opposition research on the then Presidential candidate, Donald J. Trump.  According to Fusion, it was retained to research candidate Trump's "qualifications for public office and his ties to Russia." *See* Fusion GPS' Motion to Quash Subpoena or, In the Alternative, For a Protective Order (hereinafter "Fusion's Motion"), p. 1.

In turn, Fusion hired a private contractor, Christopher Steele (and his company Orbis Business Intelligence Limited), to collect information.  *See* **Exhibit 1**.  Because Mr. Steele

---

[1] Fusion's insistence that it is exempt from the rules that govern the rest of us is not limited solely to the present proceeding: Fusion has apparently responded to a congressional subpoena seeking documents concerning the dossier by producing little more than news clippings and thousands of pages of blank documents.  *See* **Exhibit 2**.

cannot travel to Russia, he solicited information from other, unnamed, sources in Russia.  *See, e.g., Vanity Fair, "How Ex-Spy Christopher Steele Compiled His Explosive Trump-Russia Dossier," March 2017,* at https://www.vanityfair.com/news/2017/03/how-the-explosive-russian-dossier-was-compiled-christopher-steele, last accessed on September 26, 2017.  Although Mr. Steele has disclosed the names of his sources to others, including the FBI (and presumably Fusion), he has not disclosed his sources to Plaintiffs either in the a defamation action filed against him by some of the Plaintiffs in London (the "London Action") or in connection with the present case.

From the information that Mr. Steele collected, Mr. Steele drafted a series of memorandum which, collectively, comprise what has become colloquially known as the "Trump Dossier" (and also referenced herein as the "Dossier").  The last of these memorandum, dated December 13, 2016 and titled "Company Intelligence Report 2016/166" (the "December Memo") contained information which – according to Mr. Steele – was unsolicited and which he took no steps to substantiate.  *See* **Exhibit 1**.  Nevertheless, Fusion included the December Memo in the Trump Dossier.

The December Memo included various allegations concerning computer hacking of the Democratic Party, allegedly carried out by persons or organizations with ties to Russia, the Russian Government, and/or the Federal Security Service of the Russian Federation ("FSB").[2] With respect to the Plaintiffs, the dossier included the following assertions of fact:

> *[redacted] reported that over the period March-September 2016 a company called XBT/Webzilla and its affiliates had been using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct "altering operations" against the Democratic Party leadership. Entities linked to one Alexei GUBAROV [sic] were involved and he and another hacking expert,*

---

[2] The FSB is the main successor agency to the USSR's Committee of State Security (the "KGB").

*both recruited under duress by the FSB, Seva KAPSUGOVICH, were significant players in this operation. In Prague, COHEN agreed contingency plans for various scenarios to protect the operations, but in particular what was to be done in the event that Hillary CLINTON won the presidency. It was important in this event that all cash payments owed were made quickly and discreetly and that cyber and that cyber and other operators were stood down / able to go effectively to ground to cover their traces.*

*See* **Exhibit 3**.

The Plaintiffs have denied these defamatory allegations in their entirety in the underlying litigation. And, contrary to assertions made by Fusion to this Court, Buzzfeed has explicitly stated in the underlying litigation that it intends to make the truth of the allegations against the Plaintiffs a key part of its defense.

It has been widely reported that Fusion aggressively shopped the Trump Dossier to various news organizations and Mr. Steele has acknowledged having briefed reporters on its contents. *See* **Exhibit 1.** On January 10, 2017, Buzzfeed published the Trump Dossier in its entirety, including the defamatory statements concerning the Plaintiffs.

According to Buzzfeed's Editor-in-Chief, Ben Smith (also a defendant in the underlying litigation), Buzzfeed was but one of a number of media outlets that had possession of the Trump Dossier prior to its publication. It is not known how Buzzfeed and the other media outlets obtained copies of the Trump Dossier – whether from Fusion or Mr. Steele or a third-party – and Buzzfeed has thus far refused to state how it obtained its copy of the Trump Dossier.

Argument

I.       Legal Standards

Pursuant to Fed. R. Civ. P. 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P.

26(b)(1).  Under Rule 26(b)(1), "the discovery standard is very broad; material is discoverable if it appears reasonably calculated to lead to the discovery of admissible evidence."  *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 195 (D. D.C. 1998).

> In the context of discovery sought of a non-party, the scope of permitted discovery:
>
> pursuant to Rule 45 has the same scope as provided in Rule 26(b)… In general, under Rule 26(b), [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.  For purposes of discovery, relevance is liberally construed. …Thus, [t]he term relevance at the discovery stage is broadly interpreted to include information which is not admissible at the trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence.  …Therefore, with respect to a Rule 45 subpoena, [a] request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party.

*In re Denture Cream Products Liability Litigation*, 292 F.R.D. 120, 123 (D.D.C. 2013) (internal quotation marks and citations omitted).  *See*, *also*, *Phillips & Cohen, LLP v. Thorpe*, 300 F.R.D. 16, 17-18 (D. D.C. 2013).

Rule 45 articulates further the limited circumstances under which a motion to quash or modify a subpoena should be permitted.  Of the articulated bases in Rule 45, Fusion vaguely argues that three apply: undue burden, privilege, and confidential information.  In so moving, however, the burden is on Fusion "show some plainly adequate reason therefor."  *Colantuoni v. Macomber*, 1990 U.S. Dist. LEXIS 1999, *1-2 (D.D.C. 1990) (citations omitted).  "To establish 'good cause' for a protective order under Rule 26(c), [t]he courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  *Id.* (citations omitted).  In the present case, Fusion has failed to meet this burden and its motion should be denied.

II.   The Discovery Sought From Fusion is Directly Relevant to Plaintiffs' Claims and Defendants' Asserted Defenses

Preliminarily, Fusion's Motion – which fails to set out each request and the reasons for

Fusion's objections thereto – leaves the Court (and Plaintiffs) to hunt through its motion, playing mix-and-match, to determine which objections apply to which requests. As Judge Posner's oft-cited quote notes: "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Nor would the Court find such a truffle hunt rewarding, even if it were inclined to search for such morsels.

In an attempt to remedy Fusion's omission, Plaintiffs identify below each of the document requests and areas of inquiry which Fusion claims in its Motion seeks information that is not relevant to the underlying matter. Arguments concerning document requests are presented first, followed by arguments concerning areas of inquiry.

Document Requests

**Request 1:** The December Memo, in its unredacted form.

**Request 7:** All documents reflecting or relating to the sources of information concerning Aleksej Gubarev.

**Request 8:** All documents reflecting or relating to the sources of information concerning XBT Holdings, Inc.

**Request 9:** All documents reflecting or relating to the sources of information concerning Webzilla, Inc.

On its face, Fusion's assertion that the documents sought, above, are irrelevant to Plaintiffs' claims is absurd. Fusion argues that the unredacted December Memo is irrelevant to Plaintiffs' defamation claim because Buzzfeed published a redacted version of the December Memo. The redaction at issue is the removal of the name of the person or persons who made the defamatory claims about the Plaintiffs. Nothing could be more relevant to the underlying action. First, as Plaintiffs in a defamation action, the burden is on Plaintiffs to establish that the statements complained of were false. Knowing the identity of the source of such information may well be key to proving its falsity.

For example, if the source of Fusion's information was a competitor of Plaintiffs, a neighbor with a personal grudge against Mr. Gubarev, a complete stranger with an unknown agenda (who could not possibly have made the allegations from personal knowledge), or even a figment of Mr. Steele's imagination, such information would be clearly relevant to Plaintiffs' case in chief.  Indeed, Plaintiffs should be entitled to discover whether Fusion (or its contractors, such as Mr. Steele) had ever utilized the same source previously and what basis Fusion had to believe the information received was reliable (if it did so believe).

Fusion's argument that Plaintiffs do not need the information sought because they have asserted in the underlying litigation that the defamatory statements were untrue – and therefore they already know them to be untrue – could only be accepted if one had never participated in a trial or even seen one on television.  Taken to its logical conclusion, no criminal defendant could ever be convicted of a crime so long as the individual testified that he "didn't do it."  Although it is certainly true that Plaintiffs know that the statements made about them in the December Memo are false, it is equally true that they are entitled to marshall *all* of the evidence to persuade a jury of the same.

Additionally, Buzzfeed has asserted the fair reporting privilege as one of its defenses in the underlying action.  "Under Florida law, the fair reporting privilege gives the media a qualified privilege to republish statements of reports of government officials."  *Steven H. v. Duval County Sch. Bd.,* 1999 U.S. Dist. LEXIS 23349 * (M.D. Fla. 1999).  And, although neither Fusion nor Mr. Steele are "government officials," and although it seems incredibly unlikely that Mr. Steele's source (assuming he had one) was a government official, knowing the identity of the source will confirm the inapplicability of such a defense.

Finally, to the extent that Fusion has any additional information concerning Plaintiffs,

such information and its sources are clearly relevant and would be reasonably calculated to lead

to the discovery of admissible evidence.  For example, Fusion *could* have received exculpatory

information concerning the Plaintiffs from other sources, that did not (for whatever reason) make

it into the Trump Dossier.  Or Fusion might have information or sources that cast doubt on the

credibility of the source of information concerning Plaintiffs that was reported in the December

Memo.  (In reality, it seems likely that Fusion has *no* additional information or sources of

information about Plaintiffs, given that Plaintiffs had no involvement in the hacking activities of

which they were accused and were mentioned in but one paragraph of the Trump Dossier, but,

even if that is the case, then Fusion should say so and not hide behind an inapplicable

"relevance" objection.)

<u>Areas of Inquiry</u>

| | |
|---|---|
| **Topic 1:** | General background concerning Fusion GPS, its ownership, the scope of its business, and the operation of the same. |
| **Topic 2:** | Fusion GPS's engagement to conduct the research that led directly or indirectly to the creation of the December Memo. |
| **Topic 3:** | Fusion GPS's client or clients in connection with the creation of the Dossier. |
| **Topic 4:** | Fusion GPS's use and/or engagement of contractors or subcontractors in connection with the Dossier. |
| **Topic 5:** | The sources of information for the December Memo. |
| **Topic 6:** | The hiring of Fusion GPS to compile or produce the Dossier. |
| **Topic 7:** | Payments made to Fusion GPS in connection with the Dossier. |
| **Topic 8:** | All steps taken by Fusion GPS, and/or those working on its behalf to obtain information that led to the creation of the December Memo. |
| **Topic 9:** | The preparation of the December Memo. |
| **Topic 10:** | The engagement of Christopher Steele in connection with the Dossier. |

**Topic 11:**     Fusion GPS's efforts (or lack of efforts) to verify allegations in the December Memo.

**Topic 15:**     The provision of the Dossier and/or the December memo to other third parties.

**Topic 17:**     Any and all information concerning Aleksej Gubarev.

**Topic 18:**     Any and all information concerning XBT Holdings, S.A.

**Topic 19:**     Any and all information concerning Webzilla, Inc.

With respect to Topics 1-4, 6-7, and 10, Fusion claims a lack of relevance because the topics do not "reference the December Memorandum, let alone go to Buzzfeed's state of mind or the applicability of any reporting privilege." Fusion's Motion, p. 7. Preliminarily, it should go without saying that Fusion does not get to unilaterally decide what is or is not relevant to Plaintiffs' claims or Buzzfeed's defenses. Fusion's almost-comical attempts to limit relevant topics to "Buzzfeed's state of mind" and the applicability of reporting privileges should be rejected out of hand.

With respect to Fusion's objection that certain topics of inquiry refer to the dossier as a whole, as opposed to just the December Memo, it is an issue that has been discussed between counsel both in email and telephone conversations. For example, in an email of August 24, 2017, counsel for the Plaintiffs noted:

> I'm attaching revised schedules for Fusion GPS's deposition. Where possible, I've limited the area of inquiry/request to the December Memo. In some instances, though, it was impractical to do so simply because it would define things so narrowly as to exclude any reasonable response. For example, a category of inquiry concerning the hiring of Fusion to produce the December Memo would be meaningless since Fusion was hired not to produce the December Memo, per se, but the Dossier as a whole.

*See* Email of Evan Fray-Witzer, attached as **Exhibit 4**.

The same argument applies to many of the areas of inquiry. For example, an area of

inquiry limited to asking Fusion about its engagement of contractors in connection with the
December Memo would allow Fusion to simply say that it never engaged any contractor in
connection with the December Memo because, in reality, it engaged contractors in connection
with the Trump Dossier as a whole, of which the December Memo was merely a subset.

Moreover, each of the categories of inquiry were indeed tailored only to seek information
relevant to the underlying litigation.

> **Topic 1:** General background concerning Fusion GPS, its ownership, the scope of
> its business, and the operation of the same.

In its defense, Buzzfeed will undoubtedly argue that it was neither negligent nor reckless
in relying on the accuracy of the information disseminated by Fusion.  Indeed, evidence
concerning Fusion's background, the services it performs, how it collects and disseminates
information, how it verifies information collected, and the intended purposes of such information
will likely be topics addressed by both parties in the underlying litigation and is clearly relevant
to the parties' abilities to simply tell the story of what occurred.  Fusion's claim that such
background information is irrelevant is frivolous.

> **Topic 2:** Fusion GPS's engagement to conduct the research that led directly or
> indirectly to the creation of the December Memo.
>
> **Topic 3:** Fusion GPS's client or clients in connection with the creation of the
> Dossier.
>
> **Topic 4:** Fusion GPS's use and/or engagement of contractors or subcontractors in
> connection with the Dossier.
>
> **Topic 5:** The sources of information for the December Memo.
>
> **Topic 6:** The hiring of Fusion GPS to compile or produce the Dossier.

The identity of Fusion's client or clients for the Trump Dossier may well shed light on
any bias (or lack of bias) that Fusion had as it went about collecting information for the Trump

Dossier and the December Memo (as well as what information ultimately was reported in the Trump Dossier and December Memo and what information was omitted).  Likewise, the identities of the individuals with whom Fusion contracted (or subcontracted) to gather the information may reveal biases or motivations, as well as the qualifications of the individuals retained.  Each of these may shed light on the question of the veracity of the information reported and is relevant to the underlying litigation.

**Topic 7:**     Payments made to Fusion GPS in connection with the Dossier.

Here, too, the information sought may demonstrate or lead to information concerning biases in the information-gathering process.  If, for example, Fusion was paid for each memo it produced, it would have incentive to continue to produce memos, regardless of whether or not it had actually obtained any reliable or credible information.  Here, too, the information sought may lead to the discovery of evidence that calls into question the veracity of the allegations made about Plaintiffs.

**Topic 8:**     All steps taken by Fusion GPS, and/or those working on its behalf to obtain information that led to the creation of the December Memo.

**Topic 9:**     The preparation of the December Memo.

**Topic 10:**     The engagement of Christopher Steele in connection with the Dossier.

**Topic 11:**     Fusion GPS's efforts (or lack of efforts) to verify allegations in the December Memo.

It is hard to understand how Fusion can argue to this Court with a straight face that inquiries concerning the creation of the December Memo is not relevant to Plaintiffs' claims that the December Memo was defamatory.  That Mr. Steele's counsel submitted a statement in a London Action (where discovery is generally not allowed) changes nothing.  Fusion does not get to say, "you know a little and we think that's enough."  The information sought is clearly

relevant and, as such, the inquiries should be permitted.

**Topic 15:**     The provision of the Dossier and/or the December memo to other third parties.

To date, Buzzfeed's defenses have focused on its argument that, because the Trump Dossier had been widely disseminated within the government and new media outlets, Buzzfeed's publication of the dossier was privileged as neutral or fair reporting.  As such, Plaintiffs have both the right and the need to understand to whom the Trump Dossier was distributed and under what circumstances.  Indeed, Plaintiffs are entitled to learn what warnings (if any) Fusion provided to those to whom they gave copies of the Trump Dossier.  For example, if Fusion informed recipients of the Trump Dossier that the information contained therein was (in some instances), unsolicited, raw intelligence that had not been verified or confirmed in any manner, such information is clearly relevant and might lead to Plaintiffs learning what Buzzfeed was told when it received its copy of the dossier.

**Topic 17:**     Any and all information concerning Aleksej Gubarev.

**Topic 18:**     Any and all information concerning XBT Holdings, S.A.

**Topic 19:**     Any and all information concerning Webzilla, Inc.

Fusion's objections to these inquiries are simply frivolous.  Fusion complains that it should not have to answer questions concerning information that it may have gathered concerning Plaintiffs, arguing that such inquiries would constitute a "fishing expedition" because the inquiries might implicate information gathered outside of Fusion's work on the Trump Dossier.  *Fusion should be required to state  on the record that these areas of inquiry would* ***actually*** *implicate anything other than work that Fusion did in connection with the Trump Dossier.*    The proposition is absurd.  The objection has no legitimate basis and cannot possibly be seen to be made in good faith.

III.     The Information Sought From Fusion Does Not Implicate First Amendment
         Concerns

Fusion next claims that it is entitled to a Motion to Quash Plaintiffs' subpoena because

the documents and information requested would allegedly implicate the First Amendment rights

of Fusion's "clients," "colleagues," "contractors or subcontractors," "employees and staff."  To

reach this astonishing conclusion, Fusion cites exclusively to cases involving political and social

organizations such as the NAACP, the AFL-CIO, the Government Accountability Project (which

advocates on behalf of whistleblowers), and the Black Panther Party.

Fusion would have this Court believe that its work conducting paid opposition research

has somehow transformed it into a political organization and that the identity of its clients,

colleagues, contractors, subcontractors, employees, and staff are the equivalent of a

"membership list," the disclosure of which would somehow implicate those individuals' First

Amendment rights.

It is, of course, Fusion's burden to demonstrate that it is entitled to withhold documents

and/or testimony based on privilege grounds.  *United States v. American Tel. & Tel. Co.,* 86

F.R.D. 603, 604 (D.D.C. 1979) ("The party seeking the benefit of the privilege has the burden of

demonstrating its applicability.").  In meeting its burden, it is not sufficient for Fusion "simply to

allege that each element of the … privilege was, and continued to be, present. Defendant also

had the burden of showing with sufficient certainty that the elements did, in fact, exist." *Id.*

In addition, Fusion cannot rely on vague assertions or broad objections to Plaintiffs'

requests, but it must instead "comply with Rule 45's requirement that a party withholding

subpoenaed information under a claim that it is privileged must describe the nature of the

withheld documents, communications, or tangible things in a manner that, without revealing

information itself privileged or protected, will enable the parties to assess the claim." *Educ. Fin.*

*Council v. Oberg*, 2010 U.S. Dist. LEXIS 102221, *15 (D.D.C. 2010). This it clearly has not done. Instead, Fusion broadly alleges that it is entitled to a First Amendment privilege blocking the disclosure of documents and testimony with respect to the following document requests and areas of inquiry:

<u>Document Requests</u>

**Request 2:** All documents concerning Aleksej Gubarev.

**Request 3** All documents concerning XBT Holdings, S.A.

**Request 4:** All documents concerning Webzilla, Inc.

**Request 7.** All documents reflecting or relating to the sources of information concerning Aleksej Gubarev.

**Request 8:** All documents reflecting or relating to the sources of information concerning XBT Holdings, Inc.

**Request 9:** All documents reflecting or relating to the sources of information concerning Webzilla, Inc.

**Request 10:** All communications with Christopher Steele concerning the December Memo.

**Request 11:** All documents concerning the provision of the Dossier and/or the December Memo to third parties.

<u>Areas of Inquiry</u>

**Topic 2:** Fusion GPS's engagement to conduct the research that led directly or indirectly to the creation of the December Memo.

**Topic 3:** Fusion GPS's client or clients in connection with the creation of the Dossier.

**Topic 4:** Fusion GPS's use and/or engagement of contractors or subcontractors in connection with the Dossier.

**Topic 5:** The sources of information for the December Memo.

**Topic 6:** The hiring of Fusion GPS to compile or produce the Dossier.

**Topic 7:**    Payments made to Fusion GPS in connection with the Dossier.

**Topic 8:**    All steps taken by Fusion GPS, and/or those working on its behalf to obtain information that led to the creation of the December Memo.

**Topic 9:**    The preparation of the December Memo.

**Topic 10:**    The engagement of Christopher Steele in connection with the Dossier.

**Topic 11:**    Fusion GPS's efforts (or lack of efforts) to verify allegations in the December Memo.

**Topic 12:**    The provision of the Dossier, including the December Memo, to media outlets.

**Topic 15:**    The provision of the Dossier and/or the December memo to other third parties.

**Topic 16:**    Communications with others concerning the Dossier and, in particular, the December Memo and the allegations contained therein.

**Topic 17:**    Any and all information concerning Aleksej Gubarev.

**Topic 18:**    Any and all information concerning XBT Holdings, S.A.

**Topic 19:**    Any and all information concerning Webzilla, Inc.

Although the cases cited by Fusion in support of their assertion of a First Amendment privilege are wholly inapplicable here, it is worth pausing for a moment to also consider precisely how wide a swath of protection Fusion believes it would be entitled to if a privilege were to apply.  According to Fusion, there is no aspect of its work at all that is *not* protected: it can hide not only the identity of its clients, but also every fact concerning its collection of information about Plaintiffs reported in the December Memo, what it did (or did not) do to verify the information, which media outlets it provided the December Memo to, and what it told recipients of the December Memo.  In other words, Fusion is saying that it is entitled to call a press conference; disseminate defamatory information about Plaintiffs to the gathered reporters (and others) and then refuse to even reveal what it said and to whom, because … First

Amendment.  This position is absurd on its face.

Moreover, Fusion is not a political organization and its clients are just that, *clients*, not members.  Even in the context of the attorney-client privilege, neither a client's identity nor the amounts paid to an attorney are protected.  *See*, *e.g.*, *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 451 (6th Cir. 1983) ("The federal forum is unanimously in accord with the general rule that the identity of a client is, with limited exceptions, not within the protective ambit of the attorney-client privilege." (collecting cases)); *United States v. Ritchie*, 15 F.3d 592, 602 (6th Cir. 1994) ("[V]irtually every court to consider the issue has concluded that client identity and payment of fees is not privileged information."); *Libertarian Party of Ohio v. Husted* 2014 U.S. Dist. LEXIS 111338, *15 (S.D. Ohio 2014)("neither the subject matter or object of consultation nor the payment of fees are typically considered privileged.")

Nor has Fusion pointed to a single case that would suggest that the sweep of First Amendment protection is so broad as to allow a private business to assert that the disclosure of the names of its employees, contractors, subcontractors, or "colleagues" would somehow implicate that business' constitutional rights.  The constitutional protections are even less applicable to discovery concerning the steps taken by Fusion to collect and/or verify the veracity of the information that it gathered and disseminated concerning Plaintiffs.  And, certainly, Fusion has provided no basis as how its First Amendment rights are implicated if it is required to identify those reporters and news outlets that it contacted with the specific intent of encouraging such reporters and news outlets to write stories about the Trump Dossier.

For all these reasons, Fusion's assertion of First Amendment privilege should be rejected and its Motion to Quash denied.

IV.     Rule 45 Does Not Protect Fusion From Revealing the Sources of the Information
        <u>Concerning Plaintiffs</u>

Fusion next contends that revealing the source of the information concerning Plaintiffs

would place the source in "grave and life-threatening danger."[3]  Fusion Memo, p. 14.  In support

of this supposition, Fusion intentionally conflates the sources for the Trump Dossier as a whole

with the source of the information concerning Plaintiffs, noting that "people perceived as

whistleblowers or critics of the Russian government have been murdered in Russia."  *Id.*

Assuming, *arguendo*, that such a generalized fear should be given weight, it bears noting that

none of the Plaintiffs are "the Russian government," nor are they connected to the Russian

government.  Mr. Gubarev is the founder of an internet server company, living in Cypress with

his wife and children.  There is no legitimate basis for contending that a source that made

allegations about Mr. Gubarev (or his companies) would be at risk if his or her identity is

revealed.

Additionally, none of the three cases cited by Fusion requires such an all-or-nothing

approach to production.  In *Management Info. Technologies v. Alyeska Pipeline Serv. Co.*, the

court noted that it would not order the production of the names of whistleblowers "unless and

until the Court is satisfied that the sources will be adequately protected against retaliation."  151

F.R.D. 478, 482 (D.D.C.1993).  In *In re Domestic Drywall Antitrust Litig.*, the Court noted with

approval and modeled its protective order on order issued in *United States v. Valencia*, 2006 U.S.

Dist. LEXIS 60502 (S.D. Tx. 2006), where the Court allowed the production of "spreadsheets

containing survey trade data and the confidential sources that communicated that data" from a

---

[3] It has been widely reported that Mr. Steele has provided the names of ALL of his sources to the
FBI, calling into question the sincerity of Fusion's insistence that it cannot reveal the names of
its sources to anyone.

nonparty, subject to discovery and trial procedures designed to limit the disclosure of the names

of the sources and the confidential data provided by those sources.  300 F.R.D. 234, 248 (E.D.

Pa. 2014).  And, in *Gill v. Gulfstream Park Racing Ass'n*, the Court explicitly declined to opine

as to whether or not the information sought should be produced, finding only that the District

Court had failed to weigh the competing interests once it found that the "informant's privilege"

did not apply to non-government actors.  399 F.3d 391, 403 (1st Cir. 2005).

In short, the Court is fully empowered to take those steps it deems necessary (if any) to

protect the interests of the sources of information and is not limited simply to quashing a

subpoena seeking such information.  *See, e.g., Klayman v. Judicial Watch*, 247 F.R.D. 19, 22

(D.D.C. 2007)(holding that Rule 26(c) "confers broad discretion on the trial court to decide when

a protective order is appropriate and what degree of protection is required."

In *Klayman*, the Plaintiff was the former chairman of the nonprofit organization, Judicial

Watch.  After Klayman left Judicial Watch he launched a fundraising campaign aimed directly at

Judicial Watch's members and contributors, seeking to oust Judicial Watch's leadership and

reinstate him as chairman of the organization.  Judicial Watch sought a blanket "attorney's eyes

only" designation for all documents and testimony provided in discovery, pointing to Klayman's

prior bad acts and the likelihood that he would use the materials gleaned through discovery for

his campaign against Judicial Watch's leadership.  Although the Court agreed to an order

limiting the use of discovery materials to the litigation, it denied Judicial Watch's larger request

for an "attorney's eyes only order," holding that Judicial Watch had failed to prove that such an

order was necessary to protect the Defendants' interests.

In the present case, Plaintiffs have voluntarily agreed to the more stringent "attorney's

eyes only restriction" sought by the Defendants in *Klayman.*  Accordingly, to the extent that

Fusion's source needs or is entitled to protection at all, such protections have already been addressed by the "Attorney's Eyes Only" agreement entered into with Fusion's counsel.  In confirming the parties' understanding, Fusion's counsel wrote:

> Evan: per our conversations, I write to memorialize our agreement regarding the use of documents and/or testimony provided by Fusion pursuant to the Rule 45 subpoena. My understanding is as follows:
>
> You have agreed to treat all Discovery (documents or testimony) obtained from Fusion as "Attorney's Eyes Only", meaning it will not be shared with anyone other than the lawyers working on the underlying case in Florida, including your clients and/or the lawyers representing your clients in the claims against Christopher Steele and Orbis. You reserve the right to seek either our approval of sharing the discovery in a manner not authorized above and the right to seek a court order should our approval be unreasonably withheld.

*See*, **Exhibit 5.**

Because revealing the name of the source of the allegations against Plaintiffs to Plaintiffs' counsel only pursuant to the agreement outlined above presents no risk to the source, Fusion's Motion to Quash should be denied.

V.    <u>Cost Shifting</u>

Finally, although it is not necessarily an issue for today, Fusion appears to misconstrue the extent to which it is entitled to recover its costs in connection with Plaintiffs' Rule 45 subpoena.  There is no question but that Fusion is entitled to recover its *reasonable* costs incurred in connection with *complying* with the Rule 45 subpoena.  It is not, however, entitled to its costs in *fighting* compliance with the subpoena.  For example, in *G&E Real Estate, Inc. v. Avison Young-Wa., D.C., LLC*, non-party Vornado sought over $145,000 in legal fees that it incurred in connection with a Rule 45 subpoena, plus approximately $2,000 in costs.  317 F.R.D. 313 (2016).  There, the Court allowed as proper and reasonable the $2,000 in costs, as well as $1,137.50 in attorney's fees.  In denying the vast majority of attorney's fees, the Court found that

Vornado's attorneys "undertook to litigate fiercely and expend significant resources on the document review effort," which the Court found not to be "significant expenses resulting from compliance." *Id.* In short – if and when Fusion ever chooses to *comply* with the subpoena served on it, it will be entitled to recover those expenses resulting from such compliance, but not more.

Conclusion

For the reasons stated hereinabove, Plaintiffs respectfully request that Fusion's Motion to Quash Subpoena or, in the Alternative, for Protective Order be denied in its entirety.

Dated: September 26, 2017          Respectfully submitted,

/s *Walter E. Diercks*
Jeffrey Harris, Esq. (D.C. Bar # 925545
Walter E. Diercks, Esq. (D.C. Bar # 161610)
RUBIN, WINSTON, DIERCKS, HARRIS &
   COOKE, LLP
1201 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036
(202) 861-0870
jharris@rwdhc.com
wdiercks@rwdhc.com

Evan Fray-Witzer (Mass. Bar No. 564349 – pro hac vice application forthcoming)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
(617) 426-0000
Evan@CFWLegal.com

**Pursuant to LCvR 7(f) Oral Argument is requested**

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2017 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

s/ *Walter E. Diercks*
Walter E. Diercks

Service List:

William W. Taylor, III,, Esq.
Steven M. Salky, Esq.
Rachel F. Cotton, Esq.
ZUCKERMAN SPAEDER, LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036