# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ------------------------------------------------------------- ) <br> ) <br> *In Re* Third Party Subpoena to Fusion GPS ) <br> ) <br> c/o Zuckerman Spaeder LLP ) <br> 1800 M Street, N.W. ) <br> Washington, D.C. 20036 ) <br> ) <br> ------------------------------------------------------------- ) | Misc. Case No. 1:17-mc-02171-TSC |
| ------------------------------------------------------------- <br> Aleksej Gubarev, XBT Holding S.A., and ) <br> Webzilla, Inc., ) <br>            Plaintiffs, ) <br> ) <br>            v. ) <br> ) <br> Buzzfeed, Inc. and Ben Smith, ) <br> ) <br>            Defendants. ) <br> ------------------------------------------------------------- | Case No. 17-cv-60426-UU |

## CORRECTED[1] REPLY IN SUPPORT OF NON-PARTY FUSION GPS'S MOTION TO QUASH THIRD-PARTY SUBPOENA, OR IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Plaintiffs' opposition to Fusion's motion to quash proceeds on the false premise that Fusion, despite being a non-party, is subject to the same discovery as an opposing party. Worse, Plaintiffs' arguments reveal that the discovery they seek is actually being sought for use in a potential future claim against Fusion and has little, if any, relevance to its pending claims against Buzzfeed.[2]  This is a plainly improper use of a Rule 45 subpoena and Fusion's motion to quash ought to be granted on that basis alone.  *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S.

---

[1] In accordance with the Court's Minute order of October 13, 2017, Fusion GPS has re-numbered the exhibits and made appropriate changes to the Reply to avoid duplicity in the numbering of exhibits.  The exhibits attached to Fusion's Motion to Quash are numbered 1-12.  The exhibits attached to this Reply brief are numbered 13-16.

[2] Indeed, the opening sentences to Plaintiffs' opposition read: "Fusion GPS insists that it is an entity that is accountable to no one.  Instead, Fusion insists that it should be permitted to make and aggressively disseminate defamatory statements, and then hide from discovery . . . ."  Pls.' Opp'n to Fusion GPS's Mot. to Quash Subpoena or, In the Alternative, For a Protective Order ("Opp'n") at 1.  These sentences evidence Plaintiffs' true intent to sue Fusion; non-party discovery is not about "accountability."

340, 352-53 & n.17 (1978) ("when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied"); *Phillips & Cohen, LLP v. Thorpe*, 300 F.R.D. 16, 18 (D.D.C. 2013) (granting motion to quash third-party subpoena where the subpoena was "a naked attempt to gather information for use in evaluating, and perhaps litigating, a claim against" the third-party).[3]

Even if Plaintiffs could establish how a specific discovery request might conceivably advance their case against Buzzfeed, they must also demonstrate that their need for the documents or information outweighs Fusion's right as a nonparty to be free of the undue burden of the demanded discovery.  Furthermore, as we demonstrated in our initial motion to quash, Plaintiffs' discovery requests implicate Fusion's First Amendment rights to maintain the confidentiality of much of the information Plaintiffs seek.  Thus, Plaintiffs must not only demonstrate that their discovery imposes no undue burden, but that the requested discovery "goes to the heart of the matter." *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 455 (D.D.C. 2002) (quoting *Int'l Union v. Nat'l Right to Work Legal Def. & Ed. Found., Inc.*, 590 F.2d 1139, 1147 (D.C. Cir. 1978)).  For each of the document requests and subjects of inquiry in the subpoena discussed in Fusion's motion to quash, Plaintiffs fail to meet their burden.

---

[3] *See also, e.g.*, *Pac. Century Int'l, Ltd. v. Does 1-37*, 282 F.R.D. 189, 195-96 (N.D. Ill. 2012) (denying motion to compel where discovery was intended to identify additional entities to sue); *Blue Angel Films, Ltd. v. First Look Studios, Inc.*, 2011 WL 830624, at *1–2 (S.D.N.Y. Mar. 9, 2011) (granting motion to quash third-party subpoena that sought information for use in claims against subpoena recipient on the grounds that "[s]ince [the subpoena recipient] is not now a party to this action, information relevant only to potential claims against that entity is not discoverable"); *Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co.*, 2002 WL 72930, at *4 (S.D.N.Y. Jan. 17, 2002) (denying discovery where "it appears that Plaintiff was merely seeking to learn about other U.S. companies it could sue"); *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 914 F. Supp. 286, 287 (N.D. Ill. 1996) (granting motion to quash third-party subpoena where "[t]he content and broadness of plaintiffs' discovery request raise the suspicion that plaintiffs are attempting to circumvent discovery rules in a lawsuit that plaintiffs may be planning to file against [the third party subpoena recipient]").

## I.      Legal Standard

Plaintiffs' articulation of the applicable legal standard misleadingly suggests that nonparty discovery under Federal Rule of Civil Procedure 45 is identical to party discovery under Federal Rule of Civil Procedure 26. *See* Opp'n 4-5. They quote a paragraph from *In re Denture Cream Products Liability Litigation*, 292 F.R.D. 120, 123 (D.D.C. 2013) about the scope of permissible discovery, but neglect to include the following paragraph, which explains the affirmative obligation to refrain from imposing an undue burden on third parties:

> "The text of Rule 45 makes quite clear that parties and attorneys who issue subpoenas have an affirmative duty to prevent undue burden or expense to the persons subject to the subpoena," *Millennium TGA, Inc.* [*v. Comcast Cable Commc'ns*], 286 F.R.D. [8,] 11 [(D.D.C. 2012)] (citing Fed. R. Civ. P. 45(c)(1)), which thus also requires
>
>> district courts in [a]ll discovery to consider a number of factors potentially relevant to the question of undue burden, including: whether the discovery is unreasonably cumulative or duplicative; whether the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive; and whether the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.
>
> *Watts* [*v. SEC*], 482 F.3d [501,] 509 [D.C. Cir. 2007)] (citations and quotation marks omitted). Accordingly, a court considering a motion to compel production pursuant to Rule 45 "has the discretion to limit discovery to prevent undue expense to third parties, even if the discovery sought is within the permissible scope" of the Federal Rules of Civil Procedure. *Millennium TGA, Inc.*, 286 F.R.D. at 11.

*In re Denture Cream Prod. Liab. Litig.*, 292 F.R.D. at 123–24. Any discussion of these factors is tellingly missing from Plaintiffs' opposition, and Plaintiffs fail to recognize that non-party status

is an additional and important factor in evaluating whether a subpoena imposes an undue burden. *See N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005); *Wyoming*, 208 F.R.D. at 455; *see also Andrades v. Holder*, 286 F.R.D. 64, 66 (D.D.C. 2012) (granting motion to quash nonparty subpoena where requests were not "narrowly tailored"); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs").

Plaintiffs even obfuscate what Federal Rule of Civil Procedure 26 requires, failing to mention Rule 26(b)(2)(C), which states that "the court *must* limit the . . . extent of discovery otherwise allowed . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *Id.* (emphasis added).

Given that the material that Plaintiffs seek to discover was produced in connection with a hotly contested U.S. presidential election, there is no question that the discovery requests implicate Fusion's First Amendment activities. And yet, Plaintiffs' opposition completely disregards the requirements for obtaining discovery when First Amendment interests are at stake. "The D.C. Circuit has set out principles to guide a trial court's decision in cases involving the implication of a First Amendment right in the discovery context. Before compelling discovery, this court must assess (1) whether the information goes to the 'heart of the lawsuit,' (2) whether the party seeking the discovery sought the information through alternative sources, and (3) whether the party seeking disclosure made reasonable attempts to obtain the information elsewhere." *Wyoming*, 208 F.R.D. at 455 (D.D.C. 2002) (citing and quoting *Int'l Union*, 590

F.2d at 1147)).  Plaintiffs do not even attempt to argue that they have satisfied these requirements.

## II.   Plaintiffs' Discovery Requests Are Largely Irrelevant to Their Case against Buzzfeed and Would Impose an Undue Burden on Fusion.

Plaintiffs are suing Buzzfeed and its editor-in-chief for publishing the purportedly defamatory statements about Plaintiffs in the December Memo.  The suit will turn on Buzzfeed's state of mind at the time of publication and whether an applicable privilege protected the publication.  Plaintiffs nonetheless assert that the fact that Buzzfeed may argue the truth of the statements as a defense somehow opens the door to wide-ranging discovery of Fusion.  This assertion is particularly unpersuasive when, as Plaintiffs well know: (1) Buzzfeed published the Dossier (including the December Memo) with an express statement that the "allegations" were "unverified," "unconfirmed," and had at least some "clear errors;"[4] and (2) Fusion did not create or author the December Memo, and did not give it to Buzzfeed.  *See* Opp'n 2-3; *id.* Ex. 1 (Steele Defence ¶ 19); Reply Ex. 13 (Disc. Hr'g Tr. 8-9, *Gubarev v. Buzzfeed*, No. 0:17-cv-60426-UU (S.D. Fla. Sept. 28, 2017)).  As we demonstrate below, Plaintiffs' discovery requests are either not relevant to a claim against Buzzfeed, or not tailored to avoid imposing an undue burden on Fusion, or both.[5]  And, indeed, as we discuss in Section III, even if the requested discovery was permissible under Rule 45, it cannot survive First Amendment scrutiny.[6]

a.   <u>Confidential Sources</u> (Doc. Requests 1, 7-9; Area of Inquiry 5)

---

[4]   Ken Bensinger et al., These Reports Allege Trump has Deep Ties to Russia, https://www.buzzfeed.com/kenbensinger/these-reports-allege-trump-has-deep-ties-to-russia?utm_term=.pwD1qDxV7#.hv4y1J9zY.  Plaintiffs included this article as an exhibit to their complaint.  *See Gubarev v. Buzzfeed*, Compl. for Damages, Ex. 2, No. 1:17-cv-60426-UU (S.D. Fla. Feb. 28, 2017).

[5]   Fusion agreed that its pre-publication communications with Buzzfeed and/or Ben Smith concerning the publication of the Dossier were relevant to Plaintiffs' defamation claim against Buzzfeed and, therefore, agreed to produce such documents.  Mot. at 17 n.8.  Fusion searched for, but did not find, any such communications.  Reply Ex. 14 (Email from Steve Salky to Evan Fray-Witzer, Sept. 12, 2017).

[6]   Plaintiffs consistently refer to our arguments as "frivolous" or not able to be made with a straight face or similarly pejorative descriptions.  We believe the Court is able to recognize that such rhetoric is not useful and we will not respond to their misuse of such adjectives.

Plaintiffs seek to discover the identities of confidential sources in the Dossier, claiming that an Attorneys' Eyes Only agreement sufficiently protects against the dangers of disclosure. But Plaintiffs exaggerate both their need for this information and the protection provided by their attorneys' agreement to not share the information with their clients or the attorneys in England prosecuting their parallel claims against Christopher Steele.

Plaintiffs claim that the December Memo in its unredacted form is relevant because, they speculate, it contains the name or names of a person or persons who provided the allegedly defamatory information about Plaintiffs to Christopher Steele.  Opp'n 6-7.  "Nothing could be more relevant to the underlying action," they exaggerate.  *Id.*   This is far from the case.[7] Buzzfeed published the entire Dossier, including the December Memo, not only without claiming the information was true, but specifically volunteering that its own journalists did not know if the information was true.  *See supra*, footnote 3.  Thus, Buzzfeed has never claimed that it relied on any of the sources in deciding to publish the December Memo, making their identities far from a critical matter in dispute in the Buzzfeed litigation.  Indeed, as counsel for Buzzfeed explained in a recent discovery hearing, "[g]enerally, when someone seeks to compel the identity of a source, the reporter relied on that source for the truth; the source who gave the information is known only to the reporter.  That's not the case here.  The alleged defamatory statement that the Plaintiffs were – had networks that were involved in hacking the DNC.  We know who the source of that information is.  It's Christopher Steele. . . . Buzzfeed said: It's unverified.  We don't know the name of the source."  Reply Ex. 13 (Disc. Hr'g Tr. 25-26).

As Plaintiffs reveal in their opposition, what they really want to know is "whether Fusion (or its contractors, such as Mr. Steele) had ever utilized the same source previously and what

---

[7] Despite claiming that the unredacted December Memo is critical, after seeking a letter of request to depose Christopher Steele, they have not pursued that deposition.  Reply Ex. 13 (Disc. Hr'g Tr. 26).

basis Fusion had to believe the information received was reliable (if it did so believe)." Opp'n 7. What Fusion believed about the alleged source or its reliability is not at all relevant to Plaintiffs' case against Buzzfeed.[8]  That kind of information would, tellingly, only be arguably relevant to a claim *against Fusion*.

Plaintiffs make an additional argument that discovery of the source(s) is necessary because, "although it seems incredibly unlikely that Mr. Steele's source . . . was a government official, knowing the identity of the source will confirm the inapplicability of" the fair reporting privilege, which "gives the media a qualified privilege to republish statements of reports of government officials." Opp'n 7 (quoting *Steven H. v. Duval Cty. Sch. Bd.*, 1999 U.S. Dist. LEXIS 23349 (M.D. Fla. Sept. 3, 1999)).  Leaving aside Plaintiffs' admission that this discovery is "incredibly" speculative, the fair reporting privilege does not apply to the statements/reports of foreign government officials, rendering the argument meritless. *See, e.g.*, *OAO Alfa Bank v. Ctr. for Pub. Integrity*, 387 F. Supp. 2d 20, 42 (D.D.C. 2005); Restatement (Second) of Torts § 611 cmt. d (1977) (limiting the scope of the fair reporting privilege to reports or actions by "any officer or agency of the government of the United States, or of any State or of any of its subdivisions").

Balanced against the identity of the sources being irrelevant to the central issues in the underlying litigation is the danger to the sources' safety if their identities were to be revealed. Plaintiffs' assurance that Mr. Gubarev now "liv[e]s in Cypress with his wife and children" (presumably, Plaintiffs mean Cyprus) has no bearing whatsoever on those safety risks.  Opp'n

---

[8] Buzzfeed has already revealed in discovery that it is not aware of *any* conversations with *any* third parties about the Dossier in which any Plaintiff was referenced.  Reply Ex. 15 (Resps. & Objs. of Def. Buzzfeed, Inc. to Pls.' 1st Set of Interrogs., No. 10, No. 0:17-cv-60426-UU (S.D. Fla. Sept. 20, 2017)).  Further, as part of its agreement to produce certain nonprivileged documents, Fusion searched for and did not find any pre-publication communications between Buzzfeed/Smith and Fusion concerning the publication of the Dossier.  Reply Ex. 14 (Email from Steve Salky to Evan Fray-Witzer, Sept. 12, 2017).

17.  Disputing that disclosure of the identities of the sources would put those sources' lives at risk is willful and dangerous ignorance of reality.  *See, e.g.*, *Nine months, nine prominent Russians dead*, http://www.cnn.com/2017/03/24/europe/dead-russians/index.html;  Non-Party Fusion GPS's Motion to Quash Third-Party Subpoena or, in the Alternative, for a Protective Order ("Mot.") Ex. 9 (Fusion Decl. ¶ 17).[9]

Plaintiffs make much of the "Attorneys' Eyes Only" agreement between counsel.  That agreement was requested by Fusion's counsel to prevent Plaintiffs from improperly using discovery obtained from this subpoena in Plaintiffs' defamation lawsuit in the United Kingdom against Christopher Steele.  Although Plaintiffs quote Fusion counsel's proposed agreement, they fail to acknowledge their response, which was as follows:

> [W]e will agree not to share the documents (or testimony) with either British counsel or our clients with the caveat that we reserve the right to move to share the information with our clients if it becomes necessary to do so in connection with the Buzzfeed litigation.  (And, obviously, once it goes to trial, the information is public...)

Reply Ex. 16 (Email, Evan Fray-Witzer to Steve Salky (Aug. 29, 2017)).  That agreement obviously does not protect source identity from ultimate disclosure given the caveat that "once it goes to trial, the information is public."  *Id.*

Furthermore, an "Attorneys' Eyes Only" agreement—and particularly the one agreed to by Plaintiffs' counsel—is insufficient under the circumstances because "the consequences of accidental disclosure are too severe."  *In re the City of New York*, 607 F.3d 923, 936 (2d Cir. 2010).  As the Second Circuit has explained, the "'attorneys' eyes only' procedure works in some *commercial* litigation" because "[i]f a party in a commercial suit obtains a competitor's trade secrets, at worst the party will gain an unfair financial advantage over his competitor.

---

[9] Although Plaintiffs repeatedly state that Mr. Steele has provided the names of his sources to the FBI (*see* Opp'n 3, 17 n.3), they provide no factual support for that statement.

Though such an injury is serious, it involves money, not public safety, and it can usually be remedied by an injunction or money damages." *Id.* Where discovery "endanger[s] the safety" of individuals, however, an "attorneys' eyes only" designation may be insufficiently protective. *Id.* at 936-37 (holding that the disclosure of police reports on an "attorneys' eyes only" basis "would provide insufficient protection for the confidential law enforcement information at issue"). Such is the case here.[10]

        b. <u>General Information about Fusion</u> (Area of Inquiry 1)

Plaintiffs claim that general background information about Fusion is relevant because Buzzfeed may argue that "it was neither negligent nor reckless in relying on the accuracy of the information disseminated by Fusion." Opp'n 10. This claim is, in the first place, pure speculation. Neither at the time of publication nor in the underlying litigation has Buzzfeed ever argued that it relied on the accuracy of "information disseminated by Fusion."[11] Furthermore, Fusion did not author the December Memo or "disseminate" it to Buzzfeed—as Plaintiffs well know. *See* Reply Ex. 13 (Disc. Hr'g Tr. 8-9) (Plaintiffs' counsel acknowledging that "Buzzfeed didn't get the dossier from [Fusion]").

Moreover, any negligence or recklessness on Buzzfeed's part in publishing the December Memo would turn on what *Buzzfeed* knew or believed at the time of publication. Information "concerning Fusion's background, the services it performs, how it collects and disseminates information, how it verifies information collected, and the intended purposes of such

---

[10] *In re Domestic Drywall Antitrust Litigation* also explains why an attorneys' eyes-only protective order does not mitigate the undue burden imposed by compelling disclosure of confidential sources. 300 F.R.D. 234, 247 (E.D. Pa. 2014). The court noted that, unlike a trade secret which can continue to serve its purpose just as well after it is disclosed so long as a protective order is in place, any disclosure whatsoever of a confidential source will compromise that source's cooperation. *Id.*

[11] To the contrary, Buzzfeed has stated that it is "not currently aware of any [] conversations" between Buzzfeed's agents, reporters and/or editors and any third parties in which any of the Plaintiffs were referenced. Reply Ex. 15, at Interrog. Resp. No. 10.

information," is not relevant to Buzzfeed's state of mind at the time of publication.  Even if what Buzzfeed knew or believed about Fusion's background and services was potentially relevant under Plaintiffs' speculative theories, that information must be sought from Buzzfeed and not Fusion.

In seeking this information, including about "how it collects and disseminates information, how it verifies information collected, and the intended purposes of such information," it appears likely that Plaintiffs are seeking to discover information to potentially use against Fusion in a new lawsuit.

> c.  <u>Fusion's Clients and Contractors</u> (Areas of Inquiry 2-4, 6)

Plaintiffs argue that the identity of Fusion's clients and/or contractors is relevant because it "*may well* shed light on any bias (or lack of bias) that Fusion had as it went about collecting information for the Trump Dossier and the December Memo" and/or the "biases or motivations . . . of the individuals retained."  Opp'n 10-11 (emphasis added).  But any bias that Fusion or its contractors may or may not have had is utterly irrelevant to a claim *against Buzzfeed*.[12]  Plaintiffs write as if they are suing Fusion; indeed, it is notable (and startling) that in articulating the purported relevance of the identity of Fusion's clients and contractors to their suit against Buzzfeed, they do not even mention Buzzfeed.  *Id*.

Furthermore, contrary to Plaintiffs' assertion, any such purported bias of Fusion arising out of its client(s) would not "shed light on the question of the veracity of the information" in the December Memo.  *Id.* at 11.  The December Memo was not produced for Fusion's client(s) but

---

[12] This is particularly true given that Buzzfeed did not know the identity of Fusion's clients.  Mot. Ex. 9 (Fusion Decl. ¶ 9).  Buzzfeed stated when it published the Dossier that it "was prepared for political opponents of Trump."  Ken Bensinger et al., These Reports Allege Trump has Deep Ties to Russia, https://www.buzzfeed.com/kenbensinger/these-reports-allege-trump-has-deep-ties-to-russia?utm_term=.pwD1qDxV7#.hv4y1J9zY; *Gubarev v. Buzzfeed*, Compl. for Damages, Ex. 2, No. 1:17-cv-60426-UU (S.D. Fla. Feb. 28, 2017).

rather was created by Christopher Steele *after* the client engagement had ended.   Plaintiffs themselves have recognized these facts.   *See* Opp'n 3; *see also id.* Ex. 1 (Steele Defence ¶ 18-21; Defs.' Resp. to Claimants' Req. for Further Information Pursuant to CPR Pt. 18 at 2, 5 ("The December memorandum was not created or provided to Fusion pursuant to any contract.")). Thus, the notion that the identity of Fusion's client(s) could somehow reveal a bias in the information in the December Memo is far-fetched at best.

Fusion has a strong interest in maintaining the confidentiality of its clients and compelled disclosure would have adverse consequences for its business, thereby imposing an undue burden.[13]   *See* Mot. Ex. 9 (Fusion Decl. ¶ 12) (stating that compliance with the subpoena "will make it harder for Fusion GPS to attract clients, collaborate with other like-minded organizations and individuals, and hire contractors and others to assist Fusion GPS in its work"); *id.* ¶ 16 ("If Fusion GPS was forced to expose our clients' identity, those clients would be exposed to the kind of harassment to which Fusion GPS has been subjected [as a result of the publicity around the Trump Dossier]."); Mot. Ex. 12 (John Doe Decl. ¶¶ 4-6) ("Had I known that my affiliation with Fusion GPS would not be kept confidential, I would not have worked with them.  Further I would be less inclined to hire Fusion GPS in the future if I knew that my engagement of them would not be kept confidential.").   Balancing the weightiness of Fusion's interest against the lack of relevance of the requested information, the Court should deny Plaintiffs' request.   *Cf. In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 248 (E.D. Pa. 2014) (noting that disclosure of "one of the most sensitive and critical aspects of its business" was a "weighty interest" for a nonparty and holding that confidential information should be protected from disclosure).

d. <u>Payments to Fusion GPS in connection with the Dossier</u> (Area of Inquiry 7)

---

[13] We address Fusion's First Amendment interests in protecting the confidentiality of its clients in Section III below.

Plaintiffs make similar arguments in support of their request to discover payments made to Fusion in connection with the Dossier as they do about their discovery request for the identity of Fusion's clients. They assert that information about such payments "may" lead to "information concerning biases in the information-gathering process" because "[i]f, for example, Fusion was paid for each memo it produced, it would have incentive [sic] to continue to produce memos, regardless of whether or not it had actually obtained any reliable or credible information." Opp'n 11. Such speculation is unlikely to lead to admissible evidence against Buzzfeed given, among other reasons, that the December Memo was not created pursuant to any client engagement from which payment may have been rendered. *Id.* Ex. 1 (Steele Defence ¶ 18-21; Defs.' Resp. to Claimants' Req. for Further Information Pursuant to CPR Pt. 18 at 2, 5).

     e.  <u>Fusion's Involvement in the Creation of the December Memo</u> (Areas of Inquiry 8-11)

Plaintiffs find it "hard to understand how Fusion can argue to this Court with a straight face that inquiries concerning the creation of the December Memo is [sic] not relevant to Plaintiffs' claims that the December Memo was defamatory." Opp'n 11. And yet, despite this rhetoric, Plaintiffs offer no theory whatsoever as to how this information would be relevant to their defamation claim *against Buzzfeed*. *See* Fed. R. Civ. P. 26(b)(1), advisory committee's note to 2015 amendment ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues . . . ."). Plaintiffs' efforts to use a Rule 45 subpoena to discover Fusion's role (or non-role) in the creation of the December Memo and what it did to verify the allegations reek of an improper attempt to garner evidence for a claim against Fusion, particularly since Plaintiffs know that Fusion did not write the December Memo and that Christopher Steele provided that Memo to Fusion on an unsolicited basis. Opp'n Ex. 1 (Steele Defence ¶ 18-21; Defs.' Resp. to Claimants'

Req. for Further Information Pursuant to CPR Pt. 18 at 4-5).  Given that Plaintiffs have not articulated any explanation of the relevance of this discovery in a claim against Buzzfeed and the information appears more likely to be used in a claim against Fusion, Plaintiffs' requests should be denied.

        f.   <u>Provision of Dossier and/or the December Memo to Media Outlets and Other Third Parties</u> (Area of Inquiry 12, 15, 16; Doc. Request 11)

Plaintiffs claim that their discovery requests for information about the provision of the Dossier to media outlets and other third parties is relevant on the grounds that they are "entitled to learn what warnings (if any) Fusion provided to those to whom they gave copies of the Trump Dossier" because "such information is clearly relevant and might lead to Plaintiffs learning what Buzzfeed was told when it received its copy of the dossier."  Opp'n 12.  The proper source of information of "what Buzzfeed was told when it received its copy of the dossier" is Buzzfeed, the defendant in the litigation—particularly given that, as Fusion has already told Plaintiffs, it did not give the Dossier to Buzzfeed.  Reply Ex. 13 (Disc. Hr'g Tr. 8-9).  Discovery requests in non-party subpoenas are unduly burdensome (as well as unreasonably cumulative and duplicative) if they seek information that is equally available (and, here, more readily available) from parties to the litigation.  *See, e.g.*, *Educ. Fin. Council v. Oberg*, 2010 WL 3719921, at *3 (D.D.C. Mar. 8, 2010); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."); *see also In re Mot. to Compel Compliance with Subpoena Direct[ed] to Dep't of Veterans Affairs*, 257 F.R.D. 12, 19 (D.D.C. 2009) ("[E]ven modifying the subpoena to seek this limited information is unduly burdensome because of the absence of any showing that the information sought is not available from other sources.").

What Fusion may or may not have told third parties other than Buzzfeed about the Dossier is not relevant to Plaintiffs' claim against Buzzfeed and further shows that the subpoena is for the purpose of building a case against Fusion.  Indeed, Plaintiffs make several unsupported statements in their opposition that further reveal Plaintiffs' focus on a potential action against Fusion for publishing the December Memo to parties other than Buzzfeed.  *See, e.g.*, Opp'n 1 (asserting that Fusion "aggressively disseminate[d] defamatory statements" and "aggressively marketed" the defamatory statements to reporters).

      g.   <u>"Any and all" information concerning Plaintiffs</u> (Areas of Inquiry 17-19, Doc. Requests 2-4)

Fusion objected to the discovery requests seeking "any and all information concerning" Plaintiffs and any and all documents "concerning" Plaintiffs on the grounds that the requests contain no limitations in context, time, or nature, and are completely untethered from the allegedly defamatory statements at issue in the Buzzfeed litigation.  In their opposition, Plaintiffs respond with derogatory rhetoric—contending that the objection is "simply frivolous," "absurd," has "no legitimate basis," and "cannot possibly be seen to be made in good faith"—but do not articulate *any* theory of relevance whatsoever or explain why the requests are not unduly burdensome.  Opp'n 12.  Forcing Fusion to dig through all of its non-Dossier-related files for any reference from any time in any context to any Plaintiff is the definition of an unduly burdensome fishing expedition.  These requests are not remotely tailored to discover evidence that could be relevant to Plaintiffs' claim against Buzzfeed and should therefore be denied.  *Andrades*, 286 F.R.D. at 66.

III.    **The First Amendment Protects Fusion from Compelled Disclosure of Political Activities and Associations.**

Plaintiffs' subpoena seeks to expose political affiliations and political activities which Fusion and its clients sought to engage in anonymously and confidentially.  Plaintiffs do not dispute that the compelled disclosure of the information sought in their subpoena would undermine, deter, and chill Fusion and its clients' First Amendment rights.  They ignore the declarations submitted in support of Fusion's motion to quash setting forth the impact that compelled disclosure would have on these First Amendment rights.  Mot. Exs. 9, 12.  And, because they cannot, they do not even attempt to argue that the information sought would satisfy the D.C. Circuit's test for discovery that implicates the First Amendment.

Instead, Plaintiffs contend that because Fusion conducts "paid opposition research" it cannot be "a political organization" entitled to First Amendment protections.  Opp'n 13.[14]  In a post-*Citizens United* era, where corporations and other entities' First Amendment rights are indisputable, this argument should be rejected out of hand.  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 342 (2010).  In fact, Citizens United – the organization that was the subject of the Supreme Court case – was itself essentially a non-profit opposition research entity, producing "controversial" documentaries about public policy issues and politicians, including then-presidential candidate Hillary Clinton.  *See* What We Do, Citizens United, http://www.citizensunited.org/what-we-do.aspx (last visited Oct. 10, 2017); *see also Citizens United*, 558 U.S. at 319-20.  Fusion is no less entitled to the First Amendment's protections than Citizens United or any other corporation.  And, "the First Amendment's protection 'extends not

---

[14] They also construct a strawman argument, insisting that Fusion "is saying that it is entitled to call a press conference; disseminate defamatory information about Plaintiffs to the gathered reporters (and others) and then refuse to even reveal what it said and to whom, because … First Amendment."  Opp'n 15-16.  While Plaintiffs may enjoy their sound bite, this glibness belittles the substantial First Amendment implications of their subpoena, and appears based on the inaccurate premise that Plaintiffs are suing Fusion, rather than Buzzfeed.

only to the organization itself, but also to its staff, members, contributors, and others who affiliate with it.'" *Wyoming*, 208 F.R.D. at 455 (quoting *Int'l Union*, 590 F.2d at 1147).

In arguing that the First Amendment does not apply to the identity of Fusion's clients, Plaintiffs disregard *United States v. Garde*, 673 F. Supp. 604, 607 (D.D.C. 1987), a case from this district which explicitly protected from disclosure the identity of an organization's clients on First Amendment grounds.   In that case, the Nuclear Regulatory Commission subpoenaed a whistleblowers organization to obtain the names of the organization's clients and other informants who had provided the group with information about safety issues at a nuclear power plant.  The court held that it was "beyond dispute" that the organization's activities "serve as a vehicle for political expression and association" and, thus, First Amendment rights were at issue. *Id.* at 607.  After examining the government's purported interest in the information, the court refused to enforce the subpoena given the impact on the organization's right to association and the government's failure to satisfy its burden that the subpoena was narrowly drawn to avoid unnecessary infringement of associational rights.  *Id.*

Rather than confronting this authority that client names can be protected from disclosure on First Amendment grounds, Plaintiffs reach for the unrelated and inapposite doctrine of attorney-client privilege and state the unremarkable fact that the attorney-client privilege does not protect client identities.  Opp'n 16.  But, of course, the attorney-client privilege seeks to protect only the communications between an attorney and his client; it has nothing whatsoever to do with the right to associate and/or speak anonymously under the First Amendment.

In short, Plaintiffs' transparent attempt to give short shrift to Fusion's First Amendment arguments is revealing and unavailing.  Under the test mandated by the D.C. Circuit, this Court must balance the First Amendment interests against the "need for the information sought," by

assessing whether the information sought "goes to the heart of the lawsuit" and whether the requesting party has made reasonable attempts to obtain the information from alternative sources. *Wyoming*, 208 F.R.D. at 455; *see also Black Panther Party v. Smith*, 661 F.2d 1243, 1266 (D.C. Cir. 1981); *Int'l Union*, 590 F.2d at 1152. None of Plaintiffs' document requests or requests for information to which Fusion objected in its motion "go to the heart" of their lawsuit against Buzzfeed. To the contrary, they are, at most, of marginal relevance. Additionally, Plaintiffs have made no showing whatsoever that they have attempted to get any of the requested information from other sources. Accordingly, under the D.C. Circuit's test, Plaintiffs' discovery requests should be denied.[15]

## Conclusion

For the foregoing reasons, Fusion respectfully requests that the Court quash the subpoena or, in the alternative, issue a protective order in accordance with Fusion's motion to quash.

---

[15] Plaintiffs also claim that Fusion must "comply with Rule 45's requirement that a party withholding subpoenaed information under a claim that it is privileged must describe the nature of the withheld documents, communications, or tangible things . . . [to] enable the parties to assess the claim." Opp'n 13. Fusion does not know why Plaintiffs included this complaint in their opposition—counsel for Fusion and counsel for Plaintiffs discussed a privilege log and agreed that Fusion would produce one, if necessary, after the Court ruled on this motion.

Dated:  October 27, 2017

Respectfully submitted,

*/s/ Steven M. Salky*

William W. Taylor, III (DC Bar No. 84194)
Steven M. Salky (DC Bar No. 360175)
Rachel F. Cotton (DC Bar No. 997132)
**ZUCKERMAN SPAEDER LLP**
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
wtaylor@zuckerman.com
ssalky@zuckerman.com
rcotton@zuckerman.com

*Attorneys for Non-Party Fusion GPS*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of October, 2017, the foregoing was served on all counsel of record via CM/ECF.

_/s/ Rachel F. Cotton_
Rachel F. Cotton