## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ------------------------------------------------------------- ) <br> ) <br> *In Re* Third Party Subpoena to Fusion GPS ) <br> ) <br> c/o Zuckerman Spaeder LLP ) <br> 1800 M Street, N.W. ) <br> Washington, D.C. 20036 ) <br> ) <br> ------------------------------------------------------------- ) | Misc. Case No. 1:17-mc-02171 |
| ------------------------------------------------------------- ) <br> Aleksej Gubarev, XBT Holding S.A., and ) <br> Webzilla, Inc., ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> Buzzfeed, Inc. and Ben Smith, ) <br> ) <br> Defendants. ) <br> ------------------------------------------------------------- ) | Case No. 17-cv-60426 |

## <u>MOTION FOR JUDICIAL RECUSAL</u>

Federal law requires that judges maintain not only actual impartiality, but also the appearance of impartiality. 28 U.S.C. § 455(a) requires a judge to disqualify himself or herself whenever his/her "impartiality might reasonably be questioned." In this case, the Court will adjudicate a matter that pits the interests of Fusion GPS against the interests not only of the Court's recent former client, but also against the interests of President Trump, on whose presidential transition this Court volunteered. Under these circumstances, 28 U.S.C. § 455(a) requires the Court to disqualify itself from this case.

Pursuant to Local Rule 7(m), undersigned counsel conferred with opposing counsel who indicated that they oppose this motion.

## LEGAL STANDARDS

A federal judge must disqualify himself from "any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a); Code of Conduct for United States Judges, 175 F.R.D. 363, 368 (1998) (same). The mere appearance of bias is sufficient to mandate recusal—whether actual bias exists is irrelevant. *Liteky v. United States*, 510 U.S. 540, 567 (1994) (Kennedy, J., concurring). "[A] showing of an appearance of bias or prejudice sufficient to permit the average citizen reasonably to question a judge's impartiality is all that must be demonstrated to compel recusal." *United States v. Heldt*, 668 F.2d 1238, 1271 (D.C. Cir. 1981). This is an objective standard, *SEC v. Loving Spirit Found.*, 392 F.3d 486, 493 (D.C. Cir. 2004), and in "a close case, the balance tips in favor of recusal." *United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008) (citation omitted).

## BACKGROUND

### a. Fusion GPS and the "Dossier"

Fusion GPS ("Fusion") is a strategic intelligence firm that specializes in opposition research into matters of public concern. In 2015, Fusion was engaged to research then-candidate Donald Trump's qualifications for public office and his ties to Russia. A subsequent engagement on the same subject led to the creation of a series of memoranda authored by a Fusion contractor, Christopher Steele and his company Orbis Business Intelligence, that have become known as the "Trump Dossier" or the "Dossier." The Dossier reported information obtained by Mr. Steele about contacts and relationships between members of Trump's campaign and the Russian government. It also named specific Russian businesses and businesspeople and described their relationship with the Kremlin. During the Trump presidential transition, on January 10, 2017, BuzzFeed News published the Dossier on the Internet. Then-President-elect

Trump immediately began a campaign to discredit Fusion and the Dossier, including in a series of Tweets during the transition period.[1]

### b. The Gubarev Subpoena and the Fridman Defamation Litigation

As President Trump attacked Fusion and the Dossier in the political arena, certain Russian businessmen mentioned in the Dossier took to the courts to attempt to discredit it through defamation litigation.  In the case from which the subpoena before the Court arises, Russian tech entrepreneur Aleksej Gubarev and his companies, XBT Holding S.A. and Webzilla, Inc. ("the Gubarev Plaintiffs"), sued BuzzFeed and its editor-in-chief claiming that the Trump Dossier defamed them by suggesting that they were involved in cybercrimes against the Democratic Party leadership.  *See Gubarev et al. v. Buzzfeed et al.*, Compl. for Damages, Case No. 17-cv-60426 (S.D. Fla. Feb. 28, 2017).  The Gubarev Plaintiffs served a third party subpoena on Fusion (the "Gubarev Subpoena"), which Fusion has moved to quash.  Ex. A (Gubarev Subpoena).  The Gubarev Subpoena seeks discovery from Fusion that relates to the Dossier as a whole, not just to its statements about the Gubarev Plaintiffs.  *See id*. The Gubarev Plaintiffs oppose Fusion's motion to quash and acknowledge little limitation on their right to obtain discovery from Fusion on the subjects they identify.

In a different action pending in this District, three Russian oligarchs—Mikhail Fridman, Petr Aven, and German Khan ("the Fridman Plaintiffs")—have sued Fusion, alleging that the Dossier also defamed them and their business, the Alfa Group.  *See* Am. Compl., *Fridman v. Bean LLC*, Case No. 1:17-cv-02041-RJL (D.D.C. Dec. 12, 2017), ECF No. 17.  The Fridman

---

[1]  *See*  Donald  J.  Trump,  @realDonaldTrump,  *Twitter*  (Jan.  11,  2017,  7:13  AM), https://twitter.com/realDonaldTrump/status/819155311793700865 ("Russia just said the unverified report paid for by political opponents is 'A COMPLETE AND TOTAL FABRICATION, UTTER NONSENSE.' Very unfair!");  Donald  J.  Trump,  @realDonaldTrump,  *Twitter*  (Jan.  14,  2017,  5:14  AM), https://twitter.com/realDonaldTrump/status/820257714362314753 ("INTELLIGENCE INSIDERS NOW CLAIM THE TRUMP DOSSIER IS 'A COMPLETE FRAUD!'").

Plaintiffs, like the Gubarev Plaintiffs, also have a separate suit pending against BuzzFeed claiming that the Dossier defamed them and the Alfa Group. *Fridman et al. v. Buzzfeed et al.*, Index No. 154895/2017, Compl. (N.Y. Sup. Ct. May 26, 2017). As discussed more fully below, the lead plaintiff in those cases, Mr. Fridman, is the majority owner of VimpelCom Ltd., a former client of the Court.

Mr. Fridman has an acute interest in the Gubarev Plaintiffs' attempt to obtain information from Fusion through the third-party subpoena at issue here. First, the Court's adjudication of Fusion's motion to quash that subpoena will address Fusion's asserted privileges and other legal issues that will also apply to the Fridman Plaintiffs' litigation against Fusion. For example, Fusion has resisted discovery on certain topics based on its First Amendment rights to be shielded from discovery. *See In re Third Party Subpoena to Fusion GPS*, Mem. of P. & A. in Supp. of Fusion's Mot. to Quash, Case No. 1:17-mc-02171 (D.D.C. Aug. 31, 2017), ECF No. 1-2, at 10-14. Fusion has also argued that discovery into the identity of the Dossier's sources must be denied under the proportionality provision of Federal Rule of Civil Procedure 26 and the balancing of interests required by Federal Rule of Civil Procedure 45. *Id.* at 14-17. These same legal issues will inevitably arise in both lawsuits. Thus, the ability of the Gubarev Plaintiffs to overcome Fusion's objections is of great interest to the Fridman Plaintiffs.

Second, the actual information sought by the Gubarev Subpoena is of significant interest to the Fridman Plaintiffs in their lawsuits against both BuzzFeed and Fusion. The Gubarev Subpoena seeks discovery on matters, including: background information about Fusion; Fusion's engagement to conduct the research that led to the creation of the Dossier; Fusion's use and/or engagement of contractors or subcontractors in connection with the Dossier; the hiring of Fusion to compile or produce the Dossier; payments made to Fusion GPS in connection with the

Dossier; the engagement of Christopher Steele in connection with the Dossier; the provision of the Dossier to media outlets; communications between Fusion and BuzzFeed concerning the Dossier; the provision of the Dossier to other third parties; and communications with others concerning the Dossier.  Ex. A.  Both the Gubarev Plaintiffs and the Fridman Plaintiffs each seek to discredit the Dossier in order to prevail in their respective lawsuits and will use whatever information that they can obtain to accomplish that objective.  Given the overlap in their cases and their mutual objective to discredit the Dossier, it is clearly in the Fridman Plaintiffs' interest to have the Court order the discovery sought in the Gubarev Subpoena.

### c.  The Court's Work at Baker & McKenzie for a Mikhail Fridman-Controlled Company

According to public documents that the Court submitted to the U.S. Senate in connection with its confirmation hearing, the Court worked as an associate and then as a partner at Baker & McKenzie LLP in Washington, D.C. between 2013 and 2017.[2]  The Court described itself as a "white collar attorney" at the firm and stated that it "helped lead teams that conducted sensitive internal investigations for major financial institutions and publicly traded companies regarding potential violations of U.S. anti-corruption, criminal tax, sanctions, and money-laundering laws."[3]  The Court further explained that, while at Baker & McKenzie, it represented VimpelCom Ltd. in connection with a publicly reported FCPA investigation.[4]

The FCPA investigation the Court referenced resulted in a $795 million resolution with the Department of Justice, the Securities Exchange Commission, and Dutch authorities in

---

[2]    United States Senate Comm. on the Judiciary, Questionnaire for Judicial Nominees, https://www.judiciary.senate.gov/imo/media/doc/SJQ_Trevor%20McFadden.pdf, at 12.
[3] *Id.* at 19.
[4] *Nomination of Trevor McFadden to the U.S. Dist. Ct. for the District of Columbia, Questions for the Record*, Questions                         from                         Sen.                         Whitehouse, https://www.judiciary.senate.gov/imo/media/doc/McFadden%20Responses%20to%20QFRs.pdf                    (identifying VimpelCom as a client in an FCPA investigation).

February 2016,[5] but also in a three-year Deferred Prosecution Agreement.  Attorneys at Miller &

Chevalier Chartered are listed as VimpelCom's counsel on the Deferred Prosecution Agreement

dated February 10, 2016.[6]  Undersigned counsel understands that Baker & McKenzie did the

bulk of its work following that agreement.

Both at the time the Court represented it and now, VimpelCom's majority owner was

(and is) Mikhail Fridman.  Mr. Fridman has owned a majority share in the company since at least

year-end 2014.[7]  VimpelCom is now known as Veon, and Mr. Fridman currently still owns a

majority share of Veon.[8]  Mr. Fridman has been a director of VimpelCom (now Veon) since

April 2010.[9]

### d.  The Court's Work on the Trump Transition

In the same public documents submitted to the U.S. Senate, the Court reported that it

"volunteered as a vetter for President Trump's transition team."[10]  The Court explained that this

work occurred both "[p]rior and subsequent to Election Day on November 8, 2016,"[11] and that

the work involved "review[ing] public-source information" about potential appointees in order to

---

[5] Press Release, United States Dep't of Justice, VimpelCom Limited and Unitel LLC Enter into Global Foreign Bribery Resolution of More Than $795 Million; United States Seeks $850 Million Forfeiture in Corrupt Proceeds of Bribery Scheme (Feb. 18, 2016), https://www.justice.gov/opa/pr/vimpelcom-limited-and-unitel-llc-enter-global-foreign-bribery-resolution-more-795-million.

[6] *United States v. VimpelCom* Deferred Prosecution Agreement 16-cr-137 (ER) (Feb. 10, 2016), https://www.justice.gov/criminal-fraud/file/828301/download (last visited Jan. 16, 2018).

[7] *See* VimpelCom Ltd., Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the fiscal year ended Dec. 31, 2014 (Form 20-F), *available at* https://veon.com/PageFiles/7131/20f2014.PDF, at 154 (noting that LetterOne entities are the beneficial owners of 56.2% of VimpelCom common shares).

[8] Mr. Fridman's investment vehicle, LetterOne, owns roughly 48 percent of Veon shares and The Stichting, a foundation controlled by Mr. Fridman, owns an additional approximately 8 percent of Veon shares.  *See* Veon Share ownership, https://veon.com/investor-relations/Share-information/Share-ownership/ (last visited Jan. 16, 2018).  *See also* Mikhail Fridman (Co-founder, LetterOne), http://www.letterone.com/our-businesses/l1-energy/dea-supervisory-board/mikhail-fridman (last visited Jan. 16, 2016) (noting that Fridman is one of the original founders of LetterOne and the Chairman of the Board of Directors).

[9] Veon Supervisory board, https://veon.com/en/whoweare/leadership/Supervisory-board/?acceptCookies=y (last visited Jan. 16, 2018).

[10] United States Senate Comm. on the Judiciary, Questionnaire for Judicial Nominees, https://www.judiciary.senate.gov/imo/media/doc/SJQ_Trevor%20McFadden.pdf, at 11.

[11] *Id.*

identify evidence that might disqualify them or that might "reflect poorly on the President."[12]  To a reasonable person, volunteering on a presidential transition team indicates not just political support for a presidential candidate and president elect but a willingness to provide personal time and effort on his behalf.

    As noted above, the Trump Dossier became public on January 10, 2017, during the presidential transition.  In a seemingly endless parade of Tweets beginning during the transition, President Trump has sought to undermine Fusion and the Dossier.[13]  His spokesperson has

---

[12] *Nomination of Trevor McFadden to the U.S. Dist. Ct. for the District of Columbia, Questions for the Record*, Questions from Sen. Feinstein, https://www.judiciary.senate.gov/imo/media/doc/McFadden%20Responses%20to%20QFRs.pdf, at ¶ 6.

[13] *See* Donald J. Trump, @realDonaldTrump, *Twitter* (Jan. 11, 2017, 7:13 AM), https://twitter.com/realDonaldTrump/status/819155311793700865; Donald J. Trump, @realDonaldTrump, *Twitter* (Jan. 14, 2017, 5:14 AM), https://twitter.com/realDonaldTrump/status/820257714362314753; *see also* Donald J. Trump, @realDonaldTrump, *Twitter* (Oct. 19, 2017, 4:56 AM), https://twitter.com/realdonaldtrump/status/920981920787386368?lang=en ("Workers of firm involved with the discredited and Fake Dossier take the 5th.  Who paid for it, Russia, the FBI or the Dems (or all)?"); Donald J. Trump, @realDonaldTrump, *Twitter* (Oct. 21, 2017, 12:59 PM), https://twitter.com/realdonaldtrump/status/921828280998744066?lang=en ("Officials behind the now discredited 'Dossier' plead the Fifth.  Justice Department and/or FBI should immediately release who paid for it."); Donald J. Trump, @realDonaldTrump, *Twitter* (Oct. 25, 2017, 4:21 AM), https://twitter.com/realdonaldtrump/status/923147501418446849?lang=en ("'Clinton campaign & DNC paid for research that led to the anti-Trump Fake News Dossier.  The victim here is the President.' @FoxNews"); Donald J. Trump, @realDonaldTrump, *Twitter* (Oct. 29, 2017 [four consecutive tweets]), https://twitter.com/realDonaldTrump/status/924635359480303616; ("Never seen such Republican ANGER & UNITY as I have concerning the lack of investigation on Clinton made Fake Dossier (now $12,000,000?),....") (6:53 AM); https://twitter.com/realDonaldTrump/status/924637600094326784 ("...the Uranium to Russia deal, the 33,000 plus deleted Emails, the Comey fix and so much more. Instead they look at phony Trump/Russia,....") (7:02 AM); https://twitter.com/realDonaldTrump/status/924639422066384896 ("... 'collusion,' which doesn't exist. The Dems are using this terrible (and bad for our country) Witch Hunt for evil politics, but the R's...") (7:09 AM); https://twitter.com/realDonaldTrump/status/924641278947622913 ("...are now fighting back like never before. There is so much GUILT by Democrats/Clinton, and now the facts are pouring out. DO SOMETHING!") (7:17 AM); Donald J. Trump, @realDonaldTrump, *Twitter* (Oct. 30, 2017, 4:37 AM), https://twitter.com/realDonaldTrump/status/924963492645437441 ("Report out that Obama Campaign paid $972,000 to Fusion GPS. The firm also got $12,400,000 (really?) from DNC. Nobody knows who OK'd!"); Donald J. Trump, @realDonaldTrump, *Twitter* (Dec. 26, 2017, 8:24 AM), https://twitter.com/realDonaldTrump/status/945646491955290113 ("WOW, @foxandfrlends [sic] 'Dossier is bogus. Clinton Campaign, DNC funded Dossier. FBI CANNOT (after all of this time) VERIFY CLAIMS IN DOSSIER OF RUSSIA/TRUMP COLLUSION. FBI TAINTED.' And they used this Crooked Hillary pile of garbage as the basis for going after the Trump Campaign!"); Donald J. Trump, @realDonaldTrump, *Twitter* (Jan. 11, 201, 4:33 AM), https://twitter.com/realdonaldtrump/status/951431836030459905, ("'House votes on controversial FISA ACT today.' This is the act that may have been used, with the help of the discredited and phony Dossier, to so badly surveil and abuse the Trump Campaign by the previous administration and others?"); Donald J. Trump, @realDonaldTrump, *Twitter* (Jan. 11, 2018, 3:33 AM), https://twitter.com/realdonaldtrump/status/951416674808467461, ("Disproven and paid for by Democrats, 'Dossier used to spy on Trump campaign.  Did FBI use Intel tool to influence the elections?' @foxandfriends  Did Dems or

similarly attacked Fusion and the Dossier.[14]   Indeed, the tirade against Fusion has become a centerpiece of President Trump's political platform.   According to the New York Times, President Trump personally urged an investigation into Fusion and its connections with Hillary Clinton.[15]   In certain instances, President Trump's Tweets have suggested the existence of specific potentially discrediting information about the Dossier that the Gubarev Subpoena now expressly seeks to discover.

## ARGUMENT

### I.   The Court's recent representation of VimpelCom Ltd., an entity controlled by Mikhail Fridman, mandates recusal.

While an attorney at Baker McKenzie, the Court represented VimpelCom Ltd. in an FCPA investigation.[16]   That representation was ongoing less than two years ago.   VimpelCom, now known as Veon, is controlled by Mikhail Fridman and he serves as a director of the company.   Mr. Fridman is a primary beneficiary of this Court's possible denial of Fusion's

---

Clintons also pay Russians?  Where are hidden and smashed DNC servers?  Where are Crooked Hillary Emails? What a mess!").

[14]   *See e.g.*, Glenn Kessler, *Fact Checker, Analysis: Trump, Russia and the opposition research firm run by ex-journalists,* Wash. Post (Aug. 9, 2017) (quoting Sarah Huckabee Sanders, White House News Briefing (Aug. 1, 2017) ("The Democrat-linked firm Fusion GPS actually took money from the Russian government while it created the phony dossier that's been the basis for all of the Russia scandal fake news."), http://wapo.st/2vKRjBi?tid=ss_tw&utm_term=.cf26bd37b433; Charles Fein Lehman, *Huckabee Sanders Hits Press for Not Covering New Russia Dossier Testimony*, Wash. Free Beacon (July 27, 2017) ("Often, we have a lot of media with Russia first, but today, there was public testimony that further discredited the phony dossier that's been the source of so much of the fake news and conspiracy theories, and we learned that the firm that produced it was also also [sic] being paid by the Russians."), http://freebeacon.com/politics/sanders-hits-press-dossier/.

[15]   On November 30, the New York Times reported that President Trump had personally urged a Republican Senator to "begin an investigation into Hillary Clinton's connection with the intelligence-gathering firm Fusion GPS, which produced a dossier of allegations about Mr. Trump's ties to Moscow."  Jonathan Martin, Maggie Haberman, & Alexander Burns, *Trump Pressed Top Republicans to End Senate Russia Inquiry*, N.Y. Times (Nov. 30, 2017), https://www.nytimes.com/2017/11/30/us/politics/trump-russia-senate-intel.html.   Trump's personal lawyer has even called for a special counsel investigation of Fusion GPS. *See Trump lawyer wants separate special prosecutor to probe DOJ-Fusion conflicts*, Fox News (Dec. 12, 2017), http://www.foxnews.com/politics/2017/12/12/trump-lawyer-wants-separate-special-prosecutor-to-probe-doj-fusion-conflicts.html.

[16]   *Nomination of Trevor McFadden to the U.S. Dist. Ct. for the District of Columbia, Questions for the Record*, Questions from Sen. Whitehouse, https://www.judiciary.senate.gov/imo/media/doc/McFadden%20Responses%20to%20QFRs.pdf.

motion to quash.  For the Court to adjudicate a motion in which his recent former client has such a substantial interest would raise the appearance of partiality.

In *Preston v. United States*, the Ninth Circuit held that a judge should have recused himself where his former law firm represented a non-party employer who had a financial interest in the case because the outcome could have triggered indemnification obligations.  923 F.2d 731 (9th Cir. 1991).  The court noted that "the Supreme Court has never limited recusal requirements to cases in which the judge's conflict was with the parties named in the suit."  *Id.* at 735.  "Rather, the focus has consistently been on the question whether the relationship between the judge and an interested party was such as to present a risk that the judge's impartiality in the case at bar might reasonably be questioned by the public."  *Id.*  That risk is present here.

The Court's representation of VimpelCom was relatively recent.  The Judicial Conference of the United States Committee on Codes of Conduct  has recommended that judges consider a recusal period "of *at least* two years" in hearing cases involving their prior law firm. Committee on Codes of Conduct Advisory Op. No. 24 (June 2009) (emphasis added).[17]  A similar time period should apply to the interests of former clients as well.  Given Mr. Fridman's interest in the outcome of Fusion's motion to quash the Gubarev Subpoena, the same timing considerations apply here.

We also note that the specific matter on which the Court represented VimpelCom is relevant to Mr. Fridman's lawsuit against Fusion; indeed, that FCPA investigation is even discussed in Fusion's motion to dismiss in that case, filed well before this Court was assigned this case.  Fusion defends that case on the grounds, *inter alia*, that the Fridman Plaintiffs are

---

[17]  Notably, several states have rules requiring disqualification when a former client appears before the judge within a specific period of time.  *See, e.g.*, Ill. Code of Judicial Conduct, R. 63C(1)(c) (judge disqualified "for a period of seven years following the last date on which the judge represented any party to the controversy while the judge was an attorney engaged in the private practice of law"); Mich. Court Rules, R. 2.003(C)(1)(e) (judge disqualified if the judge was an attorney for a party within the preceding two years); Cal. Code Civ. Proc. § 170.1(a)(2)(B) (same).

public figures about whom there have been persistent allegations of fraud, corruption, and other misconduct.  *See* Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss, *Fridman v. Bean LLC*, Case No. 1:17-cv-02041-RJL (D.D.C. Nov. 21, 2017), ECF No. 14-1, at 19 & nn. 37-38.  In its motion to dismiss, as an example of these allegations, Fusion pointed specifically to "a recent bribery scandal involving a Fridman-owned telecommunications company [VimpelCom] that resulted in a nine-figure settlement with the U.S. Department of Justice."  *Id.* at 19.[18]

In short, the Court's recent representation of VimpelCom Ltd.—an entity controlled by Mikhail Fridman—requires recusal under Section 455(a) because Mr. Fridman's interest in the outcome of the pending motion before the Court reasonably calls into question the Court's impartiality.  Whether the Court has actual bias against Fusion or in favor of Mr. Fridman is not the question.  Because any ruling on Fusion's motion to quash the Gubarev Plaintiffs' subpoena would significantly aid Mr. Fridman and his litigation, the Court's impartiality is reasonably questioned.

## II.    The Court's work on the Trump Transition also requires recusal.

This Court was a supporter of candidate Trump and volunteered for his presidential transition.  This political work was his right as a private citizen.  But that work—which occurred only a year ago—also gives rise to an appearance problem in this case because of President Trump's animosity toward Fusion and his interest in discrediting the firm and the Dossier.  Immediately after the Trump Dossier was made public, and during the time that the Court was working for him as a vetter, then-President-elect Trump issued public statements lambasting

---

[18] As the Court may also be aware, Baker & McKenzie has performed other legal services for the Alfa Group, one of Russia's largest privately owned investment groups, including during the time that the Court worked at Baker & McKenzie.  Alfa Group is primarily owned by Messrs. Fridman, Aven, and Khan.  Although publicly available information does not indicate that the Court worked on matters relating to the Alfa Group, the firm's fiduciary duties to its clients extended to all lawyers in the firm.  Thus, Baker & McKenzie's representation of Alfa Group at the time that the Court was a partner in the firm further supports its recusal.

Fusion and the Dossier.[19]  President Trump has continued to attack and seek to discredit Fusion and the Dossier since becoming President.[20]

The Gubarev Subpoena seeks information pertaining to the Dossier as a part of the Gubarev Plaintiffs efforts to discredit it and the statements within it in order to succeed in their defamation claim against BuzzFeed.  President Trump's political interests in discrediting the Dossier are aligned with the Gubarev Plaintiffs.  *Compare* Donald J. Trump, @realDonaldTrump, Twitter (Jan. 11, 2017, 7:13 AM) (referring to the Dossier as an "unverified report"), *with* Gubarev Subpoena ¶ 11 (seeking testimony about "Fusion GPS's efforts (or lack of efforts) to verify allegations" in the Dossier); *compare* Donald J. Trump, @realDonaldTrump, Twitter (Jan. 11, 2017, 7:13 AM), (calling the Dossier "A COMPLETE AND TOTAL FABRICATION"), *with* Gubarev Subpoena ¶ 5 (seeking the "sources of information" for the Dossier memorandum at issue); *compare* Donald J. Trump, @realDonaldTrump, Twitter (Oct. 19, 2017, 4:56 AM) ("Who paid for it, Russia, the FBI or the Dems (or all)?"), *with* Gubarev Subpoena ¶ 7 (seeking testimony about "[p]ayments made to Fusion GPS in connection with the Dossier").

Under the circumstances here, the Court's ability to disregard President Trump's interest in the litigation and his repeated attacks on Fusion and the Dossier "might reasonably be questioned" given the Court's work on the Trump transition.[21]

Section 455(a) therefore requires the Court's recusal on this basis, as well.

---

[19]   *See* Donald J. Trump, @realDonaldTrump, *Twitter* (Jan. 11, 2017, 7:13 AM), https://twitter.com/realDonaldTrump/status/819155311793700865; Donald J. Trump, @realDonaldTrump, *Twitter* (Jan. 14, 2017, 5:14 AM), https://twitter.com/realDonaldTrump/status/820257714362314753.
[20] *See supra* note 14.
[21] *Accord United States v. Fiske*, 968 F. Supp. 433, 439 (E.D. Ark. 1996) (recusing from a *qui tam* case by the United States against the Independent Counsel because of judge's relationship with the Clintons and the possibility of an allegation of connection between Independent Counsel and the Clintons); *In re Starr*, 986 F. Supp. 1157, 1158 (E.D. Ark. 1997) (noting that judge's political activities "could at one time be said to have called into question this Judge's impartiality," but "any such questions have long since dissipated" given the length of time since the judge took the bench).

**CONCLUSION**

Given the Court's prior work for VimpelCom Ltd. and on President Trump's transition, undersigned counsel respectfully submit that disqualification is required under 28 U.S.C. § 455(a).

Dated:  January 16, 2018                    Respectfully submitted,

                                            */s/ William W. Taylor, III*
                                            William W. Taylor, III (DC Bar No. 84194)
                                            Steven M. Salky (DC Bar No. 360175)
                                            Rachel F. Cotton (DC Bar No. 997132)
                                            **ZUCKERMAN SPAEDER LLP**
                                            1800 M Street, NW, Suite 1000
                                            Washington, DC 20036
                                            Tel: (202) 778-1800
                                            Fax: (202) 822-8106
                                            wtaylor@zuckerman.com
                                            ssalky@zuckerman.com
                                            rcotton@zuckerman.com

                                            *Attorneys for Non-Party Fusion GPS*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January 2018, the foregoing was served on all counsel of record via CM/ECF.

*/s/ Rachel F. Cotton*
Rachel F. Cotton

# EXHIBIT A

## SCHEDULE A – 30(b)(6) AREAS OF INQUIRY

### Definitions

"Dossier." For purposes of this request, the term "Dossier" shall mean <u>both</u> the individual memos and the compilation of said memos as a unified whole. The "Dossier" refers to those memos and the compilation of such memos which were prepared by, for, at the direction or behest of, or for the benefit of Fusion GPS and which related to alleged connections between Donald Trump and Russia. For the avoidance of confusion, the term "Dossier" is intended to mean those materials widely-referred to as the "Trump Dossier," which was published by Buzzfeed, a copy of which is attached hereto.

"December Memo." For purposes of this request, the term "December Memo" shall mean the memo included in the Dossier dated December 13, 2016 and titled "Company Intelligence Report 2016/166."

"Fusion GPS." For the purposes of this request, the term "Fusion GPS" shall refer to Fusion GPS, its owners, operators, directors, officers, managers, employees, agents, contractors and freelancers.

### Areas of Inquiry

1.       General background concerning Fusion GPS, its ownership, the scope of its business, and the operation of the same.

2.       Fusion GPS's engagement to conduct the research that led directly or indirectly to the creation of the December Memo.

3.       Fusion GPS's client or clients in connection with the creation of the Dossier.

4.       Fusion GPS's use and/or engagement of contractors or subcontractors in connection with the Dossier.

5.       The sources of information for the December Memo.

6.       The hiring of Fusion GPS to compile or produce the Dossier.

7.       Payments made to Fusion GPS in connection with the Dossier.

8.       All steps taken by Fusion GPS, and/or those working on its behalf to obtain information that led to the creation of the December Memo.

9.       The preparation of the December Memo.

10.     The engagement of Christopher Steele in connection with the Dossier.

11.     Fusion GPS's efforts (or lack of efforts) to verify allegations in the December

Memo.

12. The provision of the Dossier, including the December Memo, to media outlets.

13. Communications between Fusion GPS and Buzzfeed concerning the Dossier and, in particular, the December Memo and information contained therein.

14. Communications between Fusion GPS and Ben Smith concerning the Dossier and, in particular, the December Memo and information contained therein.

15. The provision of the Dossier and/or the December memo to other third parties.

16. Communications with others concerning the Dossier and, in particular, the December Memo and the allegations contained therein.

17. Any and all information concerning Aleksej Gubarev.

18. Any and all information concerning XBT Holdings, S.A.

19. Any and all information concerning Webzilla, Inc.

## SCHEDULE B – DOCUMENTS TO BE PRODUCED

### Definitions

"Dossier" means <u>both</u> the individual memos and the compilation of said memos as a unified whole. The "Dossier" refers to those memos and the compilation of such memos which were prepared by, for, at the direction or behest of, or for the benefit of Fusion GPS and which related to alleged connections between Donald Trump and Russia. For the avoidance of confusion, the term "Dossier" is intended to mean those materials widely-referred to as the "Trump Dossier," which was published by Buzzfeed, a copy of which is attached hereto.

"December Memo." For purposes of this request, the term "December Memo" shall mean the memo included in the Dossier dated December 13, 2016 and titled "Company Intelligence Report 2016/166."

"Fusion GPS" means Fusion GPS, its owners, operators, directors, officers, managers, employees, agents, contractors and freelancers.

"Concerning" means consisting of, referring to, reflecting or in any way logically or factually connected with the matter discussed. A document "concerning" a given subject is any document identifying, showing, referring to, dealing with evidencing, commenting upon, having as a subject, describing, summarizing, analyzing, explaining, detailing, outlining, defining, interpreting, or pertaining to that subject, including without limitation, documents referring to the presentation of other documents.

"Documents" means all writings or graphic matter or other means of preserving thought or expression of any kind, including the originals and all identical copies, whether different from the original by reasons of any notation made on such copies or otherwise including, without limitation, e-mails, letters, text messages, social media messages, correspondence, memoranda, notes, diaries, studies, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice and intraoffice telephone calls, meetings or other communications, bulletins, printed matter, computer printouts, teletypes, telefax, invoices, worksheets, photographs, contracts, computer data, hard drives, correspondence, transcripts, schedules, affidavits, graphs, videotapes, tape recordings, motions pictures or other films (and all drafts, alternations, modifications, changes and amendments of any of the foregoing). It shall also include any electronically stored data on any media.

### Documents Requested

1.     The December Memo, in its unredacted form.

2.     All documents concerning Aleksej Gubarev.

3.     All documents concerning XBT Holdings, S.A.

4.     All documents concerning Webzilla, Inc.

5.      All communications between Fusion GPS and Buzzfeed concerning the Dossier.

6.      All communications between Fusion GPS and Ben Smith concerning the Dossier.

7.      All documents reflecting or relating to the sources of information concerning Aleksej Gubarev.

8.      All documents reflecting or relating to the sources of information concerning XBT Holdings, Inc.

9.      All documents reflecting or relating to the sources of information concerning Webzilla, Inc.

10.     All communications with Christopher Steele concerning the December Memo.

11.     All documents concerning the provision of the Dossier and/or the December Memo to third parties.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------------------  )
                                                               )
                                                               )
*In Re* Third Party Subpoena to Fusion GPS                     )
                                                               )   Misc. Case No. 1:17-mc-02171
c/o Zuckerman Spaeder LLP                                      )
1800 M Street, N.W.                                            )
Washington, D.C. 20036                                         )
                                                               )
-------------------------------------------------------------  )

-------------------------------------------------------------
 Aleksej Gubarev, XBT Holding S.A., and                        )
 Webzilla, Inc.,                                               )
                        Plaintiffs,                            )
                                                               )   Case No. 17-cv-60426
                            v.                                 )
                                                               )
 Buzzfeed, Inc. and Ben Smith,                                 )
                                                               )
                        Defendants.                            )
-------------------------------------------------------------

## <u>PROPOSED ORDER</u>

Before the Court is Fusion GPS's Motion for Judicial Recusal ("Motion").  Upon consideration of the Motion, the Court ORDERS that:

Fusion GPS's Motion is GRANTED; and

The Court will recuse itself from this case.

SO ORDERED.

_____
Trevor N. McFadden
United States District Judge