UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *IN RE* THIRD PARTY SUBPOENA TO FUSION GPS, | |
| c/o Zuckerman Spaeder LLP<br>1800 M Street, N.W.<br>Washington, D.C. 20036 | Case No. 1:17-mc-02171 (TNM) |
| **ALEKSEJ GUBAREV,** *et al.,* | |
| Plaintiffs, | |
| v. | Case No. 17-cv-60426-UU |
| **BUZZFEED, INC.** *et al.,* | |
| Defendants. | |

## MEMORANDUM OPINION

On August 31, 2017, Fusion GPS ("Fusion") filed a motion in the United States District

Court for the District of Columbia seeking to quash a third-party subpoena issued in connection

with a defamation action currently pending in the United States District Court for the Southern

District of Florida.  On January 3, 2018, Fusion sent a letter to me asking that I consider

disqualifying myself, and on January 8, 2018, I invited Fusion to submit formal briefing on the

matter.  Now before the Court is Fusion's motion for recusal, which argues that my impartiality

in deciding its motion to quash might reasonably be questioned because a shareholder of one of

my former clients and President Trump have purported interests in the matter.  Because a

reasonable person who was informed of all the surrounding facts and circumstances would not

believe that such an interest exists nor that such an interest, if it existed, would create an

appearance of bias, the motion for recusal will be denied.

# I.    BACKGROUND

In the underlying litigation, Aleksej Gubarev, XBT Holdings S.A., and Webzilla, Inc.,

(collectively, "the Plaintiffs") are suing Buzzfeed, Inc., and its editor in chief for defamation.  As

quoted in their complaint, their defamation claim arises out of Buzzfeed's publication of the

following statement:

> [Redacted] reported that over the period March-September 2016 a company called
> XBT/Webzilla and its affiliates had been using botnets and porn traffic to transmit
> viruses, plant bugs, steal data and conduct "altering operations" against the
> Democratic Party leadership.  Entities linked to one Aleksei GUBAROV [sic] were
> involved and he and another hacking expert, both recruited under duress by the
> FSB, Seva KAPSUGOVICH, were significant players in this operation.  In Prague,
> COHEN agreed [to] contingency plans for various scenarios to protect the
> operations, but in particular what was to be done in the event that Hillary CLINTON
> won the presidency.  It was important in this event that all cash payments owed
> were made quickly and discreetly and that cyber and that cyber [sic] and other
> operators were stood down / able to go effectively to ground to cover their traces.

Mot. Quash Ex. 6 ¶ 26.  This statement appeared in the last of a series of memoranda written by

Christopher Steele after he was retained by Fusion to investigate Donald Trump's ties to Russia.

Fusion is not a party to the underlying litigation, but it is the recipient of a third-party

subpoena from the Plaintiffs with which it does not wish to comply.  In light of Fusion's

concerns about disclosing the information requested by the subpoena, the Plaintiffs in the

underlying case have agreed that any information Fusion produces will be designated

"Attorneys' Eyes Only," meaning that "it will not be shared with anyone other than the lawyers

working on the underlying case in Florida" and that it will not be shared with any of the parties

or with lawyers working on related matters.  Opp. to Mot. Quash Ex. 5.  Notwithstanding that

agreement, Fusion has moved to quash the subpoena.  Fusion now asks that I disqualify myself

from consideration of its motion to quash.

## II.   LEGAL STANDARD

28 U.S.C. § 455 sets forth rules governing the disqualification of federal judges. Section 455(b) lays out specific situations in which a judge must recuse himself from a matter, such as when he previously served as a lawyer in the matter in controversy, when he or a close family member has a financial interest in the matter in controversy, or when he or a sufficiently close relation is a party to the proceeding. Section 455(a) is a general catchall provision, requiring that a federal judge disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." Section 455(a) calls for an objective inquiry into whether there is an appearance of impartiality, "from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Cheney v. United States Dist. Ct. for the Dist. of Columbia*, 541 U.S. 913, 924 (2004) (mem.) (Scalia, J.); *see also In re Barry*, 946 F.2d 913, 914 (D.C. Cir. 1991). A judge's duty to disqualify himself where his impartiality might reasonably be questioned under § 455(a) cannot be interpreted "as implicitly eliminating a limitation explicitly set forth in § 455(b)." *Liteky v. United States*, 510 U.S. 540, 553 (1994).[1] In other words, a litigant cannot claim that § 455(a)'s catchall provision requires disqualification where § 455(b) addresses the scenario and does not require disqualification. Moreover, "a judge has as much an obligation *not* to recuse himself where there is no reason to do so as he does to recuse himself when proper." *SEC v. Bilzerian*, 729 F. Supp. 2d 19, 22 (D.D.C.) (citing *United States v. Greenspan*, 26 F.3d 1001, 1005 (10th Cir. 1994)).

---

[1] "It would obviously be wrong, for example, to hold that 'impartiality could reasonably be questioned' simply because one of the parties is in the fourth degree of relationship to the judge. Section 455(b)(5), which addresses the matter of relationship specifically, ends the disability at the third degree of relationship, and that should obviously govern for purposes of § 455(a) as well. Similarly, § 455(b)(1), which addresses the matter of personal bias and prejudice specifically, contains the 'extrajudicial source' limitation—and that limitation (since nothing in the text contradicts it) should govern for purposes of § 455(a) as well." *Id.*

### III.   ANALYSIS

Notably, Fusion does not argue that any of the disqualifying circumstances enumerated in § 455(b) are present in this matter. Instead, it argues that there are two grounds on which my impartiality might reasonably be questioned under § 455(a). First, "Mikhail Fridman—the Court's recent former client—has a significant interest in the outcome of Fusion's motion to quash." Reply ISO Mot. Recuse at 1. Second, "the Court's recent former employer, President Donald Trump, also has an interest in the outcome of the motion." *Id.* For the reasons explained below, Fusion's recusal arguments are misguided and unpersuasive.

#### A. Both Mikhail Fridman's Connection to the Court and His Alleged Interest in This Matter Are Too Attenuated to Raise Reasonable Doubt Regarding My Impartiality

As an initial matter, Fusion is simply incorrect in characterizing Mikhail Fridman as my former client. The fact of the matter is that I do not know, have not met, and have never worked for Mr. Fridman. Nor has Fusion even alleged facts to support its description of Mr. Fridman as my former client. Rather, Fusion notes that I was previously part of the legal team providing compliance advice to VimpelCom Ltd.[2] in a Foreign Corrupt Practices Act ("FCPA") matter when I was a partner at Baker & McKenzie. Mot. Recuse at 5-6, 8. Fusion further alleges that VimpelCom "is controlled by Mikhail Fridman and he serves as a director of the company." *Id.* Mr. Fridman's alleged control of the company appears to be indirect: Fusion represents that he has an investment vehicle that owns 48% of the company's shares and that he has control of a foundation that owns an additional 8% of the company's shares. *Id.* at 6 n.8. Mr. Fridman appears to be one of ten directors on VimpelCom's board, and is not the board's chairman.

---

[2] VimpelCom has since been renamed Veon but is referred to as VimpelCom in this opinion.

By no stretch of the imagination is VimpelCom a mere shell company serving as Mr.
Fridman's alter ego. It is one of the world's largest publicly traded companies, with nearly
42,000 employees and a market cap of $6.8 billion, and it provides telecommunications services
to customers in 17 countries around the world.[3] Accordingly, my prior representation of
VimpelCom should not be confused with representation of Mr. Fridman. *See First Nat. City
Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 623, 629-30 (explaining that
"a corporation and its shareholders are deemed separate entities for most purposes" and that a
court will only "pierce the corporate veil" and treat the two as the same "where a corporate entity
is so extensively controlled by its owner that a relationship of principal and agent is created").

Fusion offers no authority for the proposition that a judge should disqualify himself based
on the interests of a person with such an attenuated connection to the judge's time in private
practice.[4] Section 455(b)(2) specifically addresses private-practice-related conflicts, and it limits
disqualification to situations in which the judge "served as lawyer in the matter in controversy, or
a lawyer with whom he previously practiced law served during such association as a lawyer
concerning the matter, or the judge or such lawyer has been a material witness concerning it."
This is not such a situation, and Fusion does not claim otherwise. The matter in which I advised

---

[3] Forbes, "Veon on the Forbes Global 2000 List," May 2017. Available at
https://www.forbes.com/companies/veon/ (last accessed Feb. 16, 2018).

[4] Fusion cites three state rules for the proposition that a judge should disqualify himself from
cases in which a recent former client is an actual party and cites a recommendation in an
advisory opinion by the Committee on Codes of Conduct that a judge consider disqualifying
himself from cases involving a firm at which he recently worked. *Id.* at 9 & n.17. Apparently
recognizing that these non-binding authorities are also not on point given that Mr. Fridman is not
my former client and is not a party to the case before me, Fusion argues that a "similar" rule
should apply in cases like this. However, extending these persuasive authorities by analogy
would require acting contrary to the binding authority of *Liteky*.

VimpelCom is not the matter raised by the motion to quash and is not related to it.[5]  Nor are

there any special circumstances in this case that would justify overlooking the limitations of

§ 455(b)(2).  *See Liteky*, 510 U.S. at 553 (warning against interpreting § 455(a) in a manner that

is inconsistent with § 455(b)(2)).  To a "reasonable observer who is informed of all the

surrounding facts and circumstances," *Cheney*, 541 U.S. at 924, my past representation of

VimpelCom—the company—says nothing about my relationship with its individual board

members or with its (indirect) shareholders.  By contrast, the fact that there is no relationship

between me and Mr. Fridman would assure a reasonable observer that I will not favor any

interest he purportedly has in the case before me.[6]

Even if there were some connection between me and Mr. Fridman, there is no cognizable

connection between Mr. Fridman and the motion to quash.  Fusion argues that, although Mr.

Fridman is not a party to the case before me or to the underlying litigation, he is "interested" in

the case due to the fact that he has filed a separate defamation claim against Fusion.[7]  Mot.

Recuse at 4-5, 9-10; Reply ISO Mot. Recuse at 1-4; *see also Fridman v. Bean LLC*, 17-cv-02041

---

[5]  Fusion asserts that my role in VimpelCom's representation is "relevant" to a different lawsuit
that Mr. Fridman has brought against Fusion because, in that case, Fusion referenced
VimpelCom's FCPA settlement as part of an effort to show that Mr. Fridman is a public figure.
Mot. Recuse at 9-10.  My representation of VimpelCom did not begin until after the settlement in
question.  Even if I had represented VimpelCom in the settlement, Fusion's assertion that the
settlement is relevant to Mr. Fridman's case would have nothing to do with the case presently
before me.

[6]  Fusion also makes passing reference to the fact that my former firm also represented the Alfa
Group, alleging that Mr. Fridman is one of the Alfa Group's three primary owners.  Mot. Recuse
at 10 n.18.  This alleged connection between me and Mr. Fridman is even more attenuated than
the connection through VimpelCom and does nothing to change the fact that I have no
relationship with him.

[7]  Fusion also notes that Mr. Fridman has a case pending against Buzzfeed in New York state
court.  *See Fridman et al. v. Buzzfeed et al.*, Index No. 154895/2017 (N.Y. Sup. Ct.).

(D.D.C). Fusion alleges that Mr. Fridman's other case causes him to be interested in the motion

to quash for two reasons: (1) Fusion plans to make some of the same arguments against

discovery in Mr. Fridman's case that it has made in this case, particularly with regard to First

Amendment privilege; and (2) Some of the information that the subpoena seeks in this case

would be relevant to Mr. Fridman's case. Mot. Recuse at 4-5; Reply ISO Mot. Recuse at 2-3.

With respect to Mr. Fridman's first alleged source of interest, I note that a decision in this case

would not be binding on the court deciding Mr. Fridman's case and would not even be the first to

address Fusion's assertion of First Amendment privilege over its activities. *See Bean LLC v.*

*John Doe Bank*, 17-02187, __ F. Supp. 3d __ (D.D.C. Jan. 4, 2018) (Leon, J.) (rejecting Fusion's

challenge to subpoena issued by House Permanent Select Committee on Intelligence). With

respect to Mr. Fridman's second alleged source of interest, I note that the "Attorneys' Eyes

Only" agreement would prevent him from obtaining any information discovered in this case for

use in his own. *See* Opp. to Mot. Quash Ex. 5.

Mr. Fridman's alleged interests in this case are not cognizable for purposes of § 455(a).

Fusion relies on two cases to establish that a judge may be disqualified based on a third party's

interests, but both cases concern financial interests that were far more direct than Mr. Fridman's

alleged interests here. Mot. Recuse at 9; Reply ISO Mot. Recuse at 3-4. First, Fusion cites

*Preston v. United States*, in which the Ninth Circuit found a judge disqualified based on his

relationship with a third party that had contracted to indemnify one of the parties before him.

*See* 923 F.2d 731, 732 (9th Cir. 1991). Second, Fusion cites *Liljeberg v. Health Services*

*Acquisition Corporation*, in which the Supreme Court found a judge disqualified based on his

relationship with a third party whose success in negotiating a multi-million contract with a party

to the case depended on the outcome of the case. *See* 486 U.S. 847, 855-56 (1988). Although

Mr. Fridman may consider my resolution of this discovery dispute interesting, he is not an interested third party in the same sense as the third parties in the cases on which Fusion relies. Those third parties had an immediate financial interest in the outcome of the cases. By contrast, Mr. Fridman's interests in this case are too attenuated to form a reasonable basis for questioning my impartiality, particularly in light of the fact that I have no relationship with him and no reason to care about any interests he may have in the matter.

### B. Both President Trump's Connection to the Court and His Alleged Interest in This Matter Are Too Attenuated to Raise Reasonable Doubt Regarding My Impartiality

Fusion's view that "the Court's recent former employer, President Donald Trump, also has an interest in the outcome of the motion" is similarly factually misinformed and legally unpersuasive. *See* Reply ISO Mot. Recuse at 1. Fusion's characterization of President Trump as my recent former employer appears to be based on public documents reflecting the fact that I "volunteered as a vetter for President Trump's transition team." Mot. Recuse at 6; *see also id.* at 7-8, 10-11; Reply ISO Mot. Recuse at 1, 4. However, my sporadic and unpaid volunteer activity during the fall of 2016 did not make President Trump my employer. *See Employer*, Black's Law Dictionary (10th ed. 2014) ("A person, company, or organization for whom someone works; esp., one who controls and directs a worker under an express or implied contract of hire and who pays the worker's salary or wages.").[8] As a volunteer, I reviewed public-source information about potential cabinet appointees for approximately four hours every few weeks for two to three

---

[8] In 2017, I did serve as a Deputy Assistant Attorney General in the U.S. Department of Justice, but Fusion's briefing has not claimed that my government employment made the President my employer, nor that my service there raises any grounds for disqualification.

months.  I did not come into contact with Mr. Trump or any of the senior members of his campaign team.  In fact, I do not know the President and have never met him in any capacity.

Fusion cites two cases in its effort to suggest that this tenuous connection with President Trump provides grounds for disqualification, neither of which are binding in this circuit or in any other.  First, it cites *United States v. Fiske*, in which a district judge disqualified himself with extreme reluctance based on his understanding of Eighth Circuit precedent, his friendship with the Clintons, and the possibility that one of the parties might eventually be alleged to have connections with the Clintons.  968 F. Supp. 433, 439 (E.D. Ark. 1996).  Second, it cites *In re Starr* for the proposition that a particular "judge's political activities 'could at one time be said to have called into question this Judge's impartiality,'" suggesting that the judge would have recused herself if an extended period of time had not passed since the activities in question.  Mot. Recuse at 11 n.21 (quoting *In re Starr*, 986 F. Supp. 1157, 1158 (E.D. Ark. 1997)).

These cases do not support the view that my attenuated connection with President Trump provides grounds for disqualification.  As for *Fiske*, the district judge in that case disqualified himself in the interest of judicial economy because he interpreted the Eighth Circuit's decision in *United States v. Tucker* expansively and was concerned that, if some connection between a party and the Clintons were alleged after he decided the case, the Eighth Circuit might determine that he was disqualified and vacate his decision.  *Fiske*, 968 F. Supp. at 438-39.  But even *Tucker* would not require my recusal here.  In *Tucker*, the Eighth Circuit disqualified a judge from deciding a matter related to the Independent Counsel's investigation of the Clintons after the judge publicly stated that he would recuse himself from any matter concerning President Clinton because of the judge's personal relationship with Hilary Clinton.  *United States v. Tucker*, 78 F.3d 1313, 1322-25 (8th Cir. 1996).  Unlike the judges in *Fiske* and *Tucker*, I do not have any

relationship with either President Trump or the First Lady.  As for *In re Starr*, Fusion's brief

relies on a partial quotation to suggest that the district judge would have recused herself if her

political activities had been more recent although she in fact declined to reach that question.  *See*

*In re Starr*, 986 F. Supp. 1157, 1158 (E.D. Ark. 1997) ("*Even if* this Judge's political activities in

1974 could at one time be said to have called into question this Judge's impartiality, any such

questions have long since dissipated . . ." (emphasis added)).  A reasonable observer would not

conclude that I should disqualify myself based on the attenuated connection with President

Trump that I developed through my limited volunteer activities with people who were not under

his direct supervision to identify qualified individuals for government positions, and these cases

do not suggest otherwise.

   Even if there had been some reasonably strong connection between the President and me,

it is far from clear that President Trump has the type of legally-cognizable interest in this case

that would call my impartiality into question.  Fusion argues that President Trump has an interest

in the motion to quash because he has tweeted criticisms of Fusion and of the memoranda that

Christopher Steele wrote after he was retained by Fusion to investigate President Trump's ties to

Russia.  Mot. Recuse at 10-11; Reply ISO Mot. Recuse at 4.  According to Fusion, denying the

motion to quash would further President Trump's "political interests."  Mot. Recuse at 11.

However, a reasonable observer would not question my ability to remain impartial based on the

possibility that discovery in this case might help the Plaintiffs show that they were defamed and

that this, in turn, might further the President's political interests by indirectly justifying his

criticisms of a detractor.[9]

---

[9]  This case is particularly unlikely to become a leading source of information that is of interest
to the President in light of the "Attorneys' Eyes Only" agreement.  Of course, any question about

Even a personal friendship with a politician is generally not grounds for disqualification unless "the personal fortune or the personal freedom of the friend" is at issue. *See Cheney*, 541 U.S. at 916 (determining that a Justice's impartiality in a case where the Vice President was named as the defendant in his official capacity could not reasonably be questioned based on the fact that he was friends with the Vice President and that he was part of a group that went on a multi-day duck-hunting trip with the Vice President while the case was pending, when the Vice President did not host the trip or have private conversations with the Justice). Whatever the President's political interests may be, Fusion has not shown that his personal fortune and personal freedom are jeopardized by the discovery dispute in the underlying case. Every President has a wide range of political interests, and President Trump has commented on a plethora of people, companies, and cases. It cannot be that the President has a cognizable interest in every matter that has the potential to indirectly vindicate his public comments. Fusion's argument that I should look beyond the traditional grounds of disqualification to consider President Trump's alleged political interests proves too much. Such an argument would lead to the disqualification of numerous judges appointed by the sitting President on a wide range of cases. *C.f., In re Exec. Office of the President*, 215 F.3d 25, 25 (D.C. Cir. 2000) (holding that a judge was not disqualified from hearing a case involving conduct by the President who appointed him and noting that two Justices appointed by President Clinton sat on the *Clinton v. Jones* case, three Justices appointed by President Nixon sat on *United States v. Nixon*, and two judges appointed by President Nixon sat on other cases related to the production of Nixon's tapes).

---

the eventual disclosure of information at trial would be decided by the District Court for the Southern District of Florida, not me.

\*       \*       \*

"It is, of course, an inescapable part of our system of government that judges are drawn

primarily from lawyers who have participated in public and political affairs.  The fact of past

political activity alone will rarely require recusal . . . ."  *Higganbotham v. Okla. Transp.*

*Comm'n,* 328 F.3d 638, 645 (10th Cir. 2003).  A reasonable observer keeps in mind that when a

judge takes office he leaves the political arena and enters a "life-tenured position and [an] oath to

'faithfully and impartially discharge and perform all duties . . . under the Constitution and laws

of the United States.'"  *In re Exec. Office of the President,* 215 F.3d at 25; *see also Cheney,* 541

U.S. 916-17, 924-26 (describing close personal relationships of Justices with Presidents through

history that did not cause recusal issues even among the most conscientious).  Life tenure is

designed to insulate the judiciary from political pressures.  *See* The Federalist No. 78 (Alexander

Hamilton).  Accordingly, "[t]o expect judges to take account of political consequences—and to

assess the high or low degree of them—is to ask judges to do precisely what they should not do."

*Cheney,* 541 U.S. at 920.  "After appointment, . . . we are expected to put political considerations

aside and decide issues on the merits."  *Fiske,* 968 F. Supp. at 439.  Yet Fusion asks me to focus

on political considerations and to avoid considering the merits of its motion to quash.  I decline

Fusion's invitation to decide its motion based on the alleged connection between the motion to

quash and President Trump's political interests.  The President's connection with me and his

interest in this case are simply too tenuous to cause a reasonable observer to question my

impartiality.

## IV.    CONCLUSION

For the foregoing reasons, Fusion's arguments for disqualification do not demonstrate an appearance of bias, whether taken individually or as a whole.  Accordingly, Fusion's motion for recusal will be denied.

Dated: February 16, 2018

TREVOR N. MCFADDEN
United States District Judge